Marshall, C. J.
 

 This action originated in the municipal court of the city of Cleveland, Ohio, to recover damages for the loss of a bundle alleged to contain valuable rugs. The suit was in form one in trover and conversion. The statement of plaintiff’s claim alleged that the Central Storage Warehouse Company is a corporation organized under Ohio laws and a public warehouseman receiving and storing goods from the public for hire. It was alleged that the plaintiff, Pickering, was the owner of, and entitled to the immediate possession of, the rugs, and that defendant, being in possession thereof, converted the same to its own use to the damage of plaintiff in the sum of $200; that demand was made upon defendant, but defendant failed and refused to deliver the goods. The statement of defense admits the corporate entity and business of the defendant, as alleged in the statement of claim, and denies plaintiff’s ownership or defendant’s conversion of the goods. Further answering, it is alleged that the goods were placed, in storage by virtue of a written contract,
 
 *78
 
 and that, among other things, the contract contains the following condition:
 

 “Received for the account of H. A. Pickering the goods enumerated in the schedule below in apparent good order except as otherwise noted. Said goods are received subject to the following conditions, which are agreed to by the acceptance of this receipt and contract:
 

 “4-A. The responsibility of this company for any article or package listed on this receipt, with the contents thereof, while in its warehouse or being carted to or from the same by it, is limited to $25, unless the value thereof is made known at the time of storing, noted on this receipt, and a higher storage rate paid therefor.”
 

 It is further alleged that plaintiff did not advise defendant that the rugs had a greater value than $25, and defendant claims, therefore, that they were stored at an agreed maximum valuation of $25.
 

 In the trial of the case in the municipal court, plaintiff introduced evidence of ownership, loss, and value, and as a part of his testimony introduced the receipt which was delivered at the time the goods were received in storage. Defendant offered no testimony. The record discloses no testimony that the storage company was advised of the contents of the bundle at the time it was delivered in storage, or that the defendant was advised of the value of the bundle. It does not appear that defendant called plaintiff’s attention to paragraph 4-A of the warehouse receipt. The receipt was denominated on its face a nonnegotiable “warehouse receipt and contract,” and con
 
 *79
 
 tained the following words printed in red ink: “Read this receipt and contract carefully.” In the descriptive schedule of the goods stored, the item representing the rugs was described as “one bundle. ’ ’
 

 Judgment was rendered against the storage company in the sum of $200, and this judgment was affirmed by the Court of Appeals of Cuyahoga county. The case was admitted to this court on allowance of motion to certify.
 

 It is claimed by plaintiff in error, the storage company, that the warehouse receipt constitutes
 
 a
 
 valid contract between the parties, although it was in form a receipt, and signed only by the warehouse company; it having been delivered to Pickering at the time the goods were stored, and having been in his possession all of the time up to the trial of the action. It is further claimed that paragraph 4-A of the receipt is a valid condition, and does not seek to excuse liability for negligence, and that the judgment should have been entered for $25. It is claimed by Pickering that the warehouse receipt did not constitute a contract binding upon him, because no inquiry was made of the value of the goods, and his attention was not called to paragraph 4-A of the receipt. It is sought by Pickering to place the liability of the warehouse company upon the same basis as that of a common carrier, and, among other cases, he cites
 
 B. & O. Rd. Co.
 
 v. Campbell, 36 Ohio St., 647, 38 Am. Rep., 617, which holds:
 

 “Words on a railroad ticket or baggage check, limiting the liability of the carrier to a specific amount for loss of baggage, are not binding on a
 
 *80
 
 passenger, unless, with knowledge of such limitation, he agrees to it.”
 

 He also cites
 
 Erie Rd. Co.
 
 v.
 
 Steinberg,
 
 94 Ohio St., 189, 113 N. E., 814, L. R. A., 1917B, 787, Ann. Cas., 1917E, 661, where it is declared:
 

 “Where a rate or charge, based upon the value of the articles transported, is provided in the schedule filed with the Public Utilities Commission of the state, it is the duty of the transporting company to require the shipper to declare the value and to demand, collect, and receive from him the rate fixed in its schedule filed with the state commission. ’ ’
 

 A brief
 
 amicus curiae
 
 has been filed in this case, on behalf of the storage company, which seeks to place a warehouse company upon the same basis as banks renting safety deposit boxes.
 

 It is not necessary in disposing of this case to discuss the adjudicated cases of this court and the courts of other states, because the subject comes clearly within the provisions of the Uniform Warehouse Receipt Act enacted by the Legislature in 1909. 99 Ohio Laws, p. 400. This act is a uniform code prepared by the committee of the American Bar Association, and is identical with the provisions of four other states of the Union. Section 8458, General Code, provides the matters which a warehouse receipt must contain. It appears that the receipt introduced in evidence in this case conforms substantially to the requirements of that section. Section 8459 provides:
 

 “Sec. 8459. A warehouseman may insert, in a receipt issued by him, any other terms and con
 
 *81
 
 ditions, provided that such terms and conditions shall not:
 

 “1. Be contrary to the provisions of this chapter.
 

 “2.
 
 In any wise impair his obligation to exercise that degree of care in the safe-keeping of the goods intrusted to him which a reasonably careful man would exercise in regard to similar goods of his own.”
 

 The necessary result of enacting a statute providing for a uniform warehouse receipt, and further providing that a warehouseman may insert terms and conditions in such receipt with well-defined limitations, is to give to a warehouse receipt the effect of a contract between the parties. If it has the force and effect of a contract, it follows that the owner of the goods stored, who has the receipt therefor in his possession, is chafged with notice and knowledge of all of the terms and conditions of the receipt. This statute makes it unnecessary to review the many authorities cited as to the necessity of bringing to the attention of the holder of the receipt notice and knowledge of such terms and conditions. He must necessarily be charged with such notice; otherwise the receipt could not have any force or effect as a contract.
 

 It only remains to determine whether paragraph 4-A violates the limitations stated in Section 8459, General Code. There can be no claim of violation except upon the question of impairing “his obligation to exercise that degree of care in the safekeeping of the goods intrusted to him which a reasonably careful man would exercise in regard to similar goods of his own.” This question is
 
 *82
 
 disposed of by the authority of
 
 B. & O. Rd. Co.
 
 v.
 
 Hubbard,
 
 72 Ohio St., 302, 74 N. E., 214, the syllabus of which declares that, where a contract is entered into between a railroad company and a shipper, whereby the carrier assumes liability on live stock to the extent only of an agreed valuation, upon which valuation is based the rate charged for the transportation of the stock, and beyond which valuation the carrier shall not be liable, and such contract is not induced by fraud, concealment, or deception, but is fairly made, “the same will be upheld as a just and reasonable method of fixing a due proportion between the amount for which the carrier becomes responsible and the freight he receives, and also of protecting himself against extravagant valuations in case of loss; and recovery for loss or damage will be limited to the amount of valuation named, even if the damage or loss occurs through the negligence of such carrier or his servants.”
 

 We are of the opinion that paragraph 4-A of the warehouse receipt in the instant case did not seek to exempt the warehouseman from negligence, but that it was a stipulation designed to limit the amount of recovery to an agreed valuation in case of loss. This being an action in trover and conversion, there could be no recovery of any sum except upon the theory of negligence. The negligence being admitted, the reasonable provisions of the warehouse receipt limiting the liability to $25 control. It cannot be said in this case that there was an effort on the part of the storage company to evade responsibility for the failure to use diligence and care in the preservation of the
 
 *83
 
 goods. By the provisions of section 5 of the warehouse receipt, the warehouse company clearly assumed responsibility of using diligence and care in the use of the following language:
 

 “It is further agreed that this company in storing said goods will use diligence and care in the preservation of the goods placed in its warehouse,” etc.
 

 There was therefore no question of responsibility for negligence. The only question before the court is as to the measure of that responsibility. The company being bound to use care, the provisions of Section 4-A fixed the measure of that responsibility, and the judgment should therefore have been in the sum of $25.
 

 Proceeding to render the judgment which the municipal court should have rendered, the case will be remanded to the municipal court of Cleveland, with instructions to enter judgment in the sum of $25.
 

 The judgment of the Court of Appeals will be reversed.
 

 Judgment reversed.
 

 Jones, Day and Kinkade, JJ., concur.