We granted a rehearing in this case solely for the purpose of reconsidering the question of whether plaintiff was bound by the provision in the warehouse receipt limiting the liability of the defendant. However, inasmuch as argument on the rehearing was unrestricted as to the other branches of the case, counsel for defendant re-urged all of the other contentions which they had made on first hearing and favored us with a brief in support thereof. These additional arguments have not served to change our view that the defendant is legally liable to plaintiff for breach of the contract of bailment and we therefore reaffirm our previous ruling to that effect for the reasons stated in the original opinion. See 15 So.2d 664.
This leaves only for consideration the question of the correctness of our former conclusion that plaintiff is not bound by the provision in the warehouse receipt limiting the value of any article or package stored with it to $50. In our previous opinion, we held that this limitation of liability was not binding upon plaintiff because, at the time the original contract of bailment was made, nothing was said by either party concerning the value of the goods delivered for storage and that the defendant could not thereafter, by the delivery of a warehouse receipt, change the contract and limit its liability, in case of loss, without directing plaintiff's attention to the restriction and obtaining his assent and approval thereto. In support of this conclusion, we relied upon the case of Williams v. Gallagher Transfer Storage Co., 170 La. 461, 128 So. 277.
An examination of the facts in the Williams case reveals that Mrs. Williams had entered into a verbal contract with a representative of Gallagher Transfer Storage Company whereby the latter agreed to store her furniture and other household effects for the Summer. After this contract was completed by the delivery of the property to the warehouse, the storage company issued to the bailor a warehouse receipt in which was contained, among other clauses, a provision limiting its liability to the sum of $50 for any one piece or package stored. The Supreme Court held that, in view of the fact that there had been an oral contract which was complete in itself prior to the time the warehouse receipt was delivered, the bailor was not bound by the limitation of liability clause because it effected a change in the original contract to which she had not consented.
Being of the belief that the facts of this case were similar to those appearing in the Williams case, we concluded in our original opinion that, since there was nothing said concerning the value of the cedar chest and its contents at the time plaintiff stored it with defendant, the subsequent issuance of the warehouse receipt, which contained the clause limiting its liability, effected a change in the original contract which could not be enforced as plaintiff's attention was not specifically directed to the restriction relied on by defendant. In other words, we found the facts to be that, when the property was delivered to defendant's warehouse, the contract was complete and that no change could be subsequently made in it without plaintiff's assent.
A re-examination of the record has been sufficient to create grave doubt in our minds as to the correctness of our previous holding on the facts of the case. In truth, we do not think that the testimony justifies the conclusion that there was a completed oral contract between the parties prior to the time the warehouse receipt was issued by the defendant. The only evidence submitted at the trial dealing with the arrangements which were made in advance of the issuance of the warehouse receipt is that of plaintiff's brother-in-law, Mr. George Harang, Wilbert Drummond, the drayman, and Mr. Julius Neumeyer, defendant's office manager.
Mr. Harang stated that, at the suggestion of plaintiff's wife, he telephoned Drummond, who was an independent drayman, to pick up the cedar chest and deliver it to the warehouse; that he also notified the defendant's office, by telephone, stating that the drayman was going to deliver the cedar chest and that, later in the afternoon when he called at the warehouse to settle a bill for storage on other property belonging to plaintiff, he was notified by one of defendant's employees that the chest had been received.
Drummond, the colored drayman, testified that he delivered the chest to defendant around 12 o'clock noon on October 31st 1938; that no receipt was given him by the defendant and that Mr. Harang paid him for the hauling. *Page 480 
Mr. Neumeyer stated that he was present at the warehouse on October 31, 1938, when the cedar chest was received; that he immediately prepared a tally sheet and also a warehouse receipt and that the original warehouse receipt, dated October 31, 1938, was mailed to plaintiff's wife in the ordinary course of business.
Counsel for plaintiff, in a supplemental brief, maintains that the foregoing evidence is sufficient to warrant the holding that there was a completed oral contract between the parties prior to the delivery of the warehouse receipt. However, a reconsideration of the evidence makes it plain to us that the contract was not completed by the mere delivery of the cedar chest and that, in the nature of things, the parties contemplated the issuance of the warehouse receipt as a necessary part of the contract. Therefore, it is apparent that a vast distinction exists between the facts of this case and those in Williams v. Gallagher Transfer Storage Co., for there, Mrs. Williams had come to a full and complete understanding with a representative of the storage company prior to the time her household effects were delivered for storage. Here, however, the only contact between plaintiff and defendant was made by plaintiff's brother-in-law who merely telephoned the warehouse company that a cedar chest was being sent to its warehouse for storage.
Since we are now of the opinion that the mere delivery of the cedar chest to defendant's place of business, accompanied by plaintiff's brother-in-law's notification to defendant's office that the property was being transported there by a drayman, did not constitute a complete oral contract for storage of the article, it is of importance to consider whether the warehouse receipt issued by defendant became the real contract between the parties. As to this question, we entertain little doubt inasmuch as defendant warehouse company operates its business subject to the provisions of the Uniform Warehouse Receipts Act, Act No. 221 of 1908. That statute requires all warehousemen to issue receipts for the goods stored with them and that such receipts must embody within their written or printed terms a description of the property stored, the date of the receipt, location of the warehouse, etc. And section 3 of the Act provides that the warehouseman may insert in the receipts issued by him any other terms and conditions, excepting such terms and conditions which are contrary to the provisions of the Act or those which in anywise impair his obligation to exercise reasonable care in the safekeeping of the goods extrusted to him. In 67 Corpus Juris, verbo "Warehousemen and Safe Depositaries", section 44, page 469, it is declared that:
"A warehouse receipt, particularly where, in addition to stating the amount or quantity of goods received, it states the conditions under which the same are to be stored, constitutes a contract between the parties thereto, for the performance of a certain duty with respect to the goods stored, except where they have expressly entered into a contract, independently of the receipt.
Thus we see that, in the present case, the warehouse receipt was the one and only completed contract since, unlike the case of Williams v. Gallagher Transfer Storage Co., the parties had not expressly entered into a verbal contract for storage "independently of the receipt."
Counsel for plaintiff maintains that, even though the warehouse receipt be regarded as the contract between the parties, the provision therein, limiting defendant's liability is nonetheless not enforceable against plaintiff for the reason that the weight of authority in this country is to the effect that restrictions in contracts of this sort will not be binding unless the bailor's attention is specifically directed to them. In support of this proposition, counsel relies on the text of 6 American Jurisprudence, verbo "Bailments", sections 177, 178 and 179 and the authorities cited in support thereof. The pertinent part of this text, which is quoted by counsel in his original brief, is found in section 179 of the volume above referred to and reads as follows:
"Although there is authority apparently to the contrary, the trend of the more recent authorities is to the view that receipt from the bailee at the time of the bailment of what is ostensibly a token for later identification of the bailed property, such as a check for a parcel left at a parcel stand or a numbered identification slip for an automobile left at a garage or parking station, does not bind the bailor as to provisions, purportedly limiting the bailee's liability, which are printed thereon, where his attention is not called to them and he has no actual knowledge at the time of the *Page 481 
bailment that they are supposed to become part of the contract. The mere retention of such a check without such knowledge does not bind him to the limitation. The mere fact that the bailor knows that there is writing on the token is immaterial, as he is not bound to read it unless he has reason to believe it contains terms, and the same is true even though in previous bailments between the same parties he has received similar tokens but has not read them or known that they contained terms."
The foregoing is, we think, a declaration of sound law to which we readily adhere. However, we do not believe that this doctrine has any application to a warehouse receipt which, under the Uniform Warehouse Receipts Act, is given not as a token or an identification tag for the bailed property but constitutes the contract governing the rights and liabilities of the parties. An agreement to store goods in a warehouse does not ordinarily contemplate a transient bailment or one of short duration. On the contrary, the contract, while indeterminate as to time, manifests a certain degree of permanence of storage which is obviously not present when a person checks a parcel or parks his automobile in a garage. In the latter case, the check or receipt given for the parcel is not considered to be a contract between the parties but merely an identification or token which entitles the holder thereof to have the stored property delivered to him. However, in the case of warehouse receipts, the law seems to be well settled that the receipt is of greater import than a token or an identification tag; that it is the contract between the parties and that the bailor is bound by the terms and conditions therein expressed despite his failure to read such terms and conditions and despite the failure of the warehouseman to direct his attention thereto.
In a comparatively recent case, Central Storage Warehouse Co. v. Pickering, 114 Ohio St. 76, 151 N.E. 39, 41, 142 A.L.R. 768, where the question of the validity of a provision, limiting the liability of the warehouseman, contained in a receipt issued under the Ohio Uniform Warehouse Receipt Act was considered, the Supreme Court of Ohio said:
"The necessary result of enacting a statute providing for a uniform warehouse receipt, and further providing that a warehouseman may insert terms and conditions in such receipt with well-defined limitations, is to give to a warehouse receipt the effect of a contract between the parties. If it has the force and effect of a contract, it follows that the owner of the goods stored, who has the receipt therefor in his possession, is charged with notice and knowledge of all of the terms and conditions of the receipt. This statute makes it unnecessary to review the many authorities cited as to the necessity of bringing to the attention of the holder of the receipt notice and knowledge of such terms and conditions. He must necessarily be charged with such notice; otherwise the receipt could not have any force or effect as a contract."
See also an annotation appearing in 142 A.L.R. pages 776 through 787, where a full discussion of the cases bearing on this question is set forth.
The pertinent portions of the warehouse receipt, which was issued to plaintiff's wife in the instant case, reads as follows:
"Received for the account of Mrs. C.H. Colgin for storage, the goods or packages enumerated in the schedule below, upon thefollowing terms and conditions, said goods stored in warehouse located at No. 225 N. Peters St., New Orleans, La.
* * * * * * *
"The Owner declares that the value of any article, piece, package or receptacle, including the contents thereof, packed, transported, received, handled or stored in this lot, does not exceed the sum of Fifty Dollars, and the value of any one load does not exceed Two Thousand Dollars, upon which valuations therates shown below have been based, and the Owner, inconsideration of said rates charged, agrees that the liability of the company, for any cause which would make it liable, shall in no event exceed the sums so above declared, unless the Owner declares a greater value in writing, and agrees to pay an additional charge of _____ cents per month for each $100.00 or fraction thereof in excess of the sum above declared." (Italics ours).
Counsel for plaintiff proclaims that the foregoing clause of limitation is not enforceable because the proviso, wherein the bailor is permitted to declare a greater value for the stored goods upon payment of an additional charge, does not set forth the amount of the additional charge but states merely _____ cents per month for each $100 or fraction thereof. Hence, counsel says, the matter of declaring a *Page 482 
greater value is left open to further negotiations between the parties and that the contract is incomplete.
We cannot agree with this proposition for the reason that the contract is fully completed by the payment of storage charges based on a valuation of $50 for each article stored or $2000 for the lot. It is only in case the owner does not accede to the declared valuation of $50 that further negotiations are necessary. In the instant case, there is not the slightest suggestion that plaintiff did not agree to the declared valuation, as he paid the storage charges which were based on that figure.
Counsel for plaintiff further contends that the limitation clause is not enforceable because it has the effect of relieving the defendant of the duty of exercising reasonable care in the safe-keeping of the goods in violation of sections 3 and 21 of Act No. 221 of 1908. Section 3 of the Act permits a warehouseman to insert in a receipt issued by him other terms and conditions, in addition to those required by section 2 of the statute, provided that they shall not —
"(A) Be contrary to the provisions of this Act;
"(B) In anywise impair his obligation to exercise that degree of care in the safekeeping of the goods entrusted to him which a reasonably careful man would exercise in regard to similar goods of his own."
And section 21 of the Act provides in substance for the warehouseman's liability for loss or damage resulting from his failure to exercise the degree of care required by law in the safe-keeping of the goods.
There can be no doubt that any provision in a warehouse receipt, which has for its purpose the avoidance of the warehouseman's duty to use reasonable care in protecting the stored goods from loss or damage, is contrary to the statute and unenforceable. But can it be fairly said that a stipulation, whereby the value of the goods stored is declared not to exceed a particular amount upon which the storage charges are based, has the effect of relieving the bailee of the duty of exercising the care required by law for the protection of the object of the bailment?
In Central Storage Warehouse Co. v. Pickering, supra, the Supreme Court of Ohio considered this question and concluded that the limitation of liability clause contained in the receipt (which was quite similar to the one now under consideration) did not violate the Uniform Warehouse Receipt Act of that state (which is practically identical with our statute) for the reason that the limitation did not "seek to exempt the warehouseman from negligence, but that it was a stipulation designed to limit the amount of recovery to an agreed valuation in case of loss."
For our own part, we concur in the reasoning of the court in the Pickering case as we are unable to detect anything in the stipulation contained in the instant matter which lessens defendant's duty to exercise reasonable care in the safe-keeping of the goods.
It also strikes us that the limitation is a reasonable one — for it is to be noted that, when the cedar chest was delivered, it was locked and roped and, consequently, defendant had no way of ascertaining the value of the articles contained in the chest. Therefore, in order to protect itself from exaggerated claims respecting the value of the contents of the chest, defendant inserted in its warehouse receipt a declared value of $50 and gave plaintiff the privilege of declaring a greater valuation upon the payment of additional storage charges. Under these circumstances, why should defendant be now required to respond to plaintiff for the sum of $622, which plaintiff claims is the real value of the articles lost as the result of defendant's neglect? Plaintiff had the opportunity to declare such a valuation but failed to do so. As a consequence, the agreed valuation stated in the warehouse receipt is binding and enforceable and defendant's liability for the articles contained in the cedar chest is limited to the sum of $50.
For the reasons assigned, the original decree of this court is recalled and annulled and it is now ordered that the judgment appealed from be and it is amended by reducing the amount thereof to the sum of $137.50. As thus amended, the judgment is affirmed with costs of the district court. The costs of this appeal are to be borne by plaintiff. Plaintiff's right to apply for a rehearing is reserved.
Original decree recalled.
Judgment of the district court amended and affirmed. *Page 483