MISSOURI PACIFIC TRANSPORTATION COMPANY *v*. WILLIAMS.

4-7424 182 S. W. 2d 762

Opinion delivered October 16, 1944.

*Henry Donham* and *Richard M. Ryan,* for appellant.

*Ed F. McDonald,* for appellee.

McHaney, J. On September 24, 1943, appellee was a passenger on appellant's bus from Brinkley to Little Rock. On arrival at the bus terminal in Little Rock, she entered the check or parcel room and checked her hand bag, containing valuable articles of clothing and other personal belongings, for safe keeping, and was given a duplicate parcel or baggage check, for which she paid ten cents. Some two or three hours later she returned, presented said check, demanded her baggage, and same was not delivered to her. These facts were stipulated. The check is attached to the stipulation and on the face of it provides in part as follows: "10 cents for each 24 hours or fraction thereof. Maximum charge for 30 days $1.00. The carrier will not be responsible for loss, damage or detention of articles left in storage for any amount in excess of $25.00." Appellee testified that she did not read the printed matter on the face of the check and that her attention was not called to it by appellant's agent or anyone else. Appellant's agent testified that the porter just handed out too many bags to some person, in explanation of the failure to deliver appellee her bag.

On a suit by appellee to recover the value of her bag and its contents and for damages for inconvenience, etc., on account of its loss, appellant tendered into court the sum of $25 in full settlement of its liability, which was refused, and a trial to the court sitting as a jury resulted in a judgment against appellant for $160.50 as the value thereof and for $30 as damages. The case is here on appeal.

First it may be said that there is no question here of a loss in transportation. The baggage was not checked

for transportation, but for safe keeping, for which a nominal charge of ten cents was made regardless of the value of the parcel, whether $5 or $500, the charge is the same, ten cents per day with a maximum charge of $1 for 30 days, and said check further provides that "parcels remaining on hand for more than 30 days may be sold for charges." Nor is there any question here of a minimum charge for a certain valuation and the option to pay a higher rate on a declaration of higher value, such as are frequently involved in carrier contracts for transportation as freight or as baggage of a passenger, and in warehouse receipts for goods held in storage. Such a warehouse receipt was involved in the case of *Gulf Compress Co.* v. *Harrington,* 90 Ark. 256, 119 S. W. 249, 23 L. R. A., N. S., 1205, where it was held that a stipulation therein that the compress company is "not responsible for loss by fire,—" should not be construed to exempt it from liability for loss by fire caused by its own negligence. That was a case where the company sought complete exemption from liability, even for its own negligence. In *Central Storage Warehouse Co.* v. *Pickering,* 114 Ohio St. 76, 142 A. L. R. 768, 151 N. E. 39, it was held that a stipulation in the warehouse receipt referred to as "4-A," limiting responsibility of the company to $25 for any article listed on the receipt, "unless the value thereof is made known at the time of storing, noted on this receipt, and a higher storage rate paid therefor," is a valid stipulation. It was held in that case that such a receipt, to quote a headnote in A. L. R., "becomes a contract between the parties, and the person receiving and holding such receipt, even though he does not sign the same or otherwise expressly assent to its terms and conditions, is chargeable with knowledge of such terms and conditions, and is bound by same provided same be not contrary to the provisions of those sections and other related sections (of the Uniform Warehouse Receipt Act adopted in Ohio in 1909), and further provided that such terms and conditions do not in any wise impair the obligation of the warehouseman 'to exercise that degree of care in the safekeeping of the goods intrusted to him which a reasonably careful man would exercise in regard to

similar goods of his own.'" It was held that these provisos had not been violated, and the court, speaking through Chief Justice MARSHALL, said: "There was therefore no question of responsibility for negligence. The only question before the court is as to the measure of that responsibility. The company being bound to use care, the provisions of section 4-A fixed the measure of that responsibility, and the judgment should therefore have been in the sum of $25." This case is not cited or quoted from for the purpose of approval as to warehouse receipts, but for the purpose of illustrating the differences between such receipts, in which a provision is made for the declaration of a higher value and payment of a higher rate, and the case at bar where only a nominal, flat charge is made for the temporary safekeeping of parcels, regardless of their value, provided primarily for the convenience of passengers. It is authority, however, for the proposition that the stipulation on appellee's check, above quoted, became a contract between her and appellant, even though she did not read same, or have her attention called to it, or otherwise expressly assent thereto, as she is chargeable with knowledge of its terms and conditions, and is bound by same.

Such is the effect of the holding of this court in *Missouri Pacific R. R. Co.* v. *Fuqua*, 150 Ark. 145, 233 S. W. 926. There, Fuqua was a passenger on one of the company's trains into Little Rock, en route to Oklahoma; that he had to spend the night here to get a train to Oklahoma; that he checked his suitcase in the parcel room at the depot, paying ten cents therefor, and received a parcel stub check containing the exact stipulation limiting liability to $25, as here involved. The depot was destroyed that night by accidental fire, as was also Fuqua's suitcase and contents. He sued to recover their value and the company pleaded said stipulation of $25 as the maximum amount to be recovered, if any. Negligence of the company was alleged because of the failure of the company's employees in the parcel room to remove said suitcase to a safe place, and the evidence as to negligence as alleged was held to be sufficient to go to the

jury. This court reversed the judgment of the trial court on a verdict for $150 and reduced it to $25, and said: "It is also contended by appellant that the court committed error in permitting a recovery in excess of $25. Appellee contends otherwise, insisting, first, that the contract makes no attempt to exempt appellant or limit its liability by reason of negligence; second, that appellant could not limit its liability growing out of its own negligence.

"(a) We think the contract broad enough to limit appellant's liability on any account. The language of the contract is: 'The carrier will not be responsible for loss, damage or detention of articles left in storage for any amount in excess of $25.' It is broader than the language used in *Gulf Express Co.* v. *Harrington,* 90 Ark. 256, 119 S. W. 249, 23 L. R. A., N. S., 1205."

In that case Fuqua testified, without contradiction, that no questions were asked him as to the contents of the suitcase and that nothing was said as to the amount he would receive in case it was lost. An examination of the briefs in that case and of the abstract of the evidence therein is convincing that Fuqua did not read the stipulation on the check, nor was his attention called to it. But in answer to his contention that the company, by said stipulation, did not attempt to limit its liability by reason of negligence, and that it could not do so where the loss was caused by its own negligence, this court said: "We think the contract broad enough to limit appellant's liability on any account." So, this court held the stipulation to be a contract, even though it was not called to the attention of Fuqua.

To the same effect is the case of *Noyes* v. *Hines,* 220 Ill. App. 409, annotated in 27 A. L. R. 158, with our own Fuqua case. It was there said: "We think the weight of authority is to the effect that when a person accepts a ticket from a bailee in receipt for a parcel deposited with him, he is bound by the terms and conditions of that receipt in so far as he has reasonable notice of the same, and in so far as the same are reasonable. In this case it does not seem to be unreasonable to hold that a person

depositing luggage or similar articles temporarily, in the manner as shown by the evidence, and for a consideration of only 10 cents to be paid by him, would expect that there would be some limitation placed upon the value of the article so deposited. If this were not so, then the defendant would have been bound if plaintiff had deposited with his suitcase $100,000 worth of diamonds or other articles of similar great value. The condition, therefore, in itself, seems to have been a reasonable one. The notice as to the condition would also seem to have been reasonable. The defendant had a right to assume that the plaintiff could read the English language; had also a right to assume that the plaintiff would take notice that by reason of the very small charge he could not expect an unlimited liability."

Whether the weight of authority is as stated in *Noyes* v. *Hines, supra,* we do not now determine. We do know there are a number of cases to the contrary. See 27 A. L. R., note p. 159. In 10 Am. Jur., § 189, it is said: "The passenger or owner of the baggage delivered to the carrier in its parcel room is presumed to have knowledge of a condition or stipulation printed on the duplicate parcel check, limiting the carrier's liability to a sum stated thereon, and he is bound by such a provision. However, it has been held in some decisions that in the absence of proof of express knowledge on the part of the passenger of the provisions of a clause limiting liability, he is not bound thereby." For authority for the first statement, the author cites *Terry* v. *Southern R. Co.,* 81 S. C. 279, 62 S. E. 249, 18 L. R. A., N. S., 295, and it supports the statement. Cases are also cited to support the second statement.

It is admitted that appellant's agent was negligent in delivering appellee's baggage to another. But for that negligence, the loss would not have occurred. However, the purpose of the stipulation was to limit its liability for negligence, not to exempt it entirely, and the language used was "broad enough to limit appellant's liability on any account." *Fuqua* case, *supra.*

Appellee cites *K. C. S. Rd. Co.* v. *Skinner,* 88 Ark. 189, 113 S. W. 1019, and *Strickland* v. *Mo. Pac. Trans. Co.,* 195 Ark. 950, 115 S. W. 2d 830, to support her right to recover. In neither of these cases was there any question of the limitation of liability involved and both concerned baggage lost in shipment, so they are not in point here.

We have carefully reconsidered our Fuqua case, and, while we find it contrary to some very respectable authority, we also find it supported by other very respectable authority. It has been the law in this state for a period of 24 years, and we decline at this time to overrule it.

The judgment will be reduced to $25 with interest to the date of tender and appellee will be charged with the costs that have accrued since the date of the tender.

ROBINS, J., dissents.

McFADDIN, J. (concurring). I concur in the result reached by the majority in this case, for the sole reason that the case of *Missouri Pacific R. R. Co.* v. *Fuqua,* 150 Ark. 145, 233 S. W. 926, is directly in point and ruling here; and we must either reverse the case at bar or overrule the Fuqua case.

If the question here presented were a matter of first impression by this court, I would hold that the receiver of the parcel could not limit his liability for his own negligence. But the Fuqua case held otherwise. It was decided in 1921, and has thus been the rule in Arkansas for 23 years. Eleven sessions of the General Assembly have had ample opportunity to enact a law changing the rule in the Fuqua case; but no legislature has done so. It is not for courts to legislate. If we should overrule the Fuqua case, we would be, in effect, legislating into existence a liability that we held in the Fuqua case to be nonexistent.

I am not willing to overrule the Fuqua case; so I concur in the result reached by the majority.