538

SIDNEY R. KLAR et al., Appellants, *v.* H. & M. PARCEL ROOM, INC., Respondent.

First Department, April 5, 1946.

*George Landesman* of counsel (*Horace G. Marks* with him on the brief), for appellants.

*Travers E. Devlin* of counsel (*John E. Buck,* attorney), for respondent.

Cohn, J. Defendant operates a parcel room on the concourse of the 33rd Street Station of the Hudson & Manhattan Railroad Company in the city of New York at which packages may be checked by the general public. One Ellis, acting for plaintiffs, checked a package two feet long and one foot wide containing valuable fur skins. In exchange, he received a parcel check numbered 34–971. Two days later plaintiff Sidney R. Klar went to defendant's parcel room, presented the parcel check and demanded the package, but was informed by defendant that by mistake the parcel had been delivered to another who presented a receipt bearing another number.

The parcel check accepted by plaintiffs was made of cardboard three inches in length and two and one-half inches in width. It had conspicuously printed on its face at the bottom the identifying number in red type one-half inch high. Upon the upper portion of the receipt, together with other immaterial printed matter, there appeared in red letters one-quarter inch high the word "Contract" and directly underneath in finer type (legible on close inspection), crowded in a space less than an inch in width and running across the face of the stub, the following language:

" This Contract is made on the following conditions and in consideration of the low rate at which the service is performed, and its acceptance by the depositor, expressly binds both parties to the Contract.

" Charge — 10 cents for every 24 hours or fraction thereof, for each piece covered by this contract.

" Loss or damage — no claim shall be made in excess of $25.00 for loss or damage to any piece.

" Unclaimed articles remaining after 90 days may be sold at public or private sale to satisfy accrued charges."

The manager of defendant's parcel room, in describing the procedure followed in the checking of articles, stated that when a parcel is accepted it is placed in the parcel room in the particular bin reserved for packages of similar size; the depositor is charged ten cents and a receipt is issued to him upon which there appears a number and the printed matter above quoted. A stub bearing the same number as the receipt is placed with the package. When a depositor seeks the return of an article he surrenders his receipt and the parcel bearing the stub with the corresponding number is delivered.

Ellis, who checked the parcel for plaintiffs, testified that he did not read the ticket given to him at the time; that he was not asked to read it and that he thought it was merely a receipt

for the package. Aside from the fact that the receipt given by defendant to plaintiffs had the limitation of liability printed thereon, there is no evidence in the record that any other form of notice was given by defendant to plaintiffs.

The present action was brought in the Municipal Court of the City of New York to recover $1,000, the alleged value of the parcel checked with defendant. In the trial court a judgment was entered in favor of plaintiffs for $939.50. Upon appeal to the Appellate Term, the judgment was modified by reducing plaintiffs' recovery to $25 upon the ground that defendant's liability under the contract is limited to that sum, and that the limitation of liability was sufficiently brought to plaintiffs' attention to bind them contractually. Apparently the Appellate Term was of the view that plaintiffs are presumed to have had knowledge of the limitation of defendant's liability for loss or damage because this condition was printed on the face of the parcel check given to plaintiffs.

We are unable to concur in the finding of the Appellate Term. In the absence of a special contract, express or implied, a bailee accepting baggage to be checked in its parcel room on payment of a nominal sum becomes a bailee for hire and is bound to exercise ordinary care in keeping and safeguarding the property. The measure of the bailee's liability for loss of the property through its negligence is the reasonable value of the property. (8 C. J. S., Bailments, § 55; *Cohen* v. *Henry Siegel Co.*, 220 Mass. 215; *Jones* v. *Great Northern Ry. Co.*, 68 Mont. 231; *Broderick* v. *Torkomian*, 107 Conn. 99.) The parties to a bailment may, however, contract to diminish the bailee's common-law obligation with respect to the subject of the bailment provided the contract is not in violation of law or of public policy. (*Sun Printing & Publishing Assn.* v. *Moore*, 183 U. S. 642, 654; *Sagendorph* v. *First National Bank of Philmont*, 218 App. Div. 285; *Fulton Lighterage Co.* v. *New York Central R. R. Co.*, 136 Misc. 374, 375; 6 Williston on Contracts [Rev. ed.], § 1751C, p. 4972.) The law in this State is well grounded that to bind the bailor to a contract limiting the bailee's liability, it must be established that there is a special contract to that effect; that the bailor has had reasonable notice of the terms and that he has assented to them. (*Healy* v. *New York Central & H. R. R. R. Co.*, 153 App. Div. 516, affd. 210 N. Y. 646; *Morgan* v. *Woolverton*, 203 N. Y. 52, 53; *Madan* v. *Sherard,* 73 N. Y. 329, 333–334; *Blossom* v. *Dodd*, 43 N. Y. 264, 269–270; *Galowitz* v. *Magner*, 208 App. Div. 6, 8.) The great weight of authority in this country is in accord

with the New York rule. (*Lebkeucher* v. *Pennsylvania Railrad Co.*, 97 N. J. L. 112, affd. 98 N. J. L. 271; *Union Bus Station* v. *Etosh*, 48 Ohio App. 161; *Brown* v. *Hines*, 213 Mo. App. 298; *Union News Co.* v. *Vinson*, 227 S. W. 236 [Tex.]; *Jones* v. *Great Northern Ry. Co.*, 68 Mont. 231, *supra; Denver Terminal Co.* v. *Cullinan*, 72 Col. 248; *Kravitz* v. *Parking Service Co.*, 29 Ala. App. 523; *Dodge* v. *Nashville, C. & St. L. Ry. Co.*, 142 Tenn. 20; *Sandler* v. *Commonwealth Station Co.*, 307 Mass. 470. But, see *Noyes* v. *Hines*, 220 Ill. App. 409; *Cunningham* v. *Int. Com. of Y. M. C. A.*, 51 Cal. App. 487; *Keenan Hotel Co.* v. *Funk*, 93 Ind. App. 677; *Mo. Pac. Transportation Co.* v. *Williams*, 207 Ark. 750.)

Concededly, defendant here was guilty of ordinary negligence. Indeed, in a somewhat similar case, failure to deliver to the rightful owner because of mistake in delivering to another has been characterized as gross negligence. (*Dalton* v. *Hamilton Hotel Operating Co., Inc.*, 242 N. Y. 481, 489.) To relieve itself from liability for full damages, defendant under the law was obliged to show that there was a contract between the parties upon the special terms contained in the receipt. (*Madan* v. *Sherard*, 73 N. Y. 333, *supra*.) There is no proof in this record that there were conspicuous signs or large placards about the parcel room calling attention to the limitation of liability, nor is there evidence that plaintiffs had any other form of notice which embraced the terms of a special contract or that there was any opportunity afforded to plaintiffs to assent to or dissent from the alleged contract. In the absence of any of these items of proof, it cannot be said that a mere acceptance of the parcel check by the bailor with the printed matter thereon, as a matter of law, sufficiently brought to plaintiffs' attention the limitation of liability. As the Court of Appeals stated in *Madan* v. *Sherard* (*supra,* 334): " * * * The plaintiff, on receiving the paper, had, from the nature and circumstances of the transaction, a right to regard it as designed simply as a voucher to enable him to follow and identify his property; and if he had no notice that it was intended to subserve any other purpose, or that it embodied the terms of a special contract, his omission to read it was not *per se* negligence."

In the leading case of *Healy* v. *New York Central & H. R. R. R. Co.* (153 App. Div. 516, 519, 210 N. Y. 646, *supra*), the court in holding that one checking a valise was not chargeable with the knowledge that the parcel check contained a limitation of liability for loss, in an opinion by Lyon, J., used the following apposite language: " The coupon was presumptively intended as between the parties to serve the special purpose of

affording a means of identifying the parcel left by the bailor. In the mind of the bailor the little piece of cardboard which was undoubtedly hurriedly handed to him and which he doubtless as hurriedly slipped into his pocket, without any reasonable opportunity to read it, and hastened away without any suggestion having been made upon the part of the parcel room clerk as to the statements in fine print thereon, did not arise to the dignity of a contract by which he agreed that in the event of the loss of the parcel, even through the negligence of the bailee itself, he would accept therefor a sum which perhaps would be but a small fraction of its actual value.

"The plaintiff having had no knowledge of the existence of the special contract limiting the liability of the defendant to an amount not exceeding ten dollars, and not being chargeable with such knowledge, the minds of the parties never met thereon, and the plaintiff cannot be deemed to have assented thereto and is not bound thereby."

The provision for limiting liability in the *Healy* case (*supra*) was set forth on the reverse side of the receipt, whereas in the case at bar the limitation was finely printed on the face of the parcel check. Nonetheless we think that the rule enunciated in the *Healy* case is applicable to the facts here.

Defendant is in no position to claim that the receipt constituted the contract of bailment between the parties as it failed to show that plaintiffs' attention was called to the terms of the special agreement or that plaintiffs knew or were presumed to know about it. While the defendant bailee should be protected in its legal right to limit its responsibility, the public should also be safeguarded against imposition. If the bailee wishes to limit its liability for negligence, it must at least show that it has given adequate notice of the special contract and that it has received the assent thereto of those with whom it transacts business.

Upon the evidence in this case we hold that it was a question of fact for the Trial Judge to decide whether acceptance by the bailor of the receipt for the package in the circumstances disclosed constituted a contract between the parties for the limitation of liability. (*Madan* v. *Sherard, supra,* 334; *Morgan* v. *Woolverton,* 203 N. Y. 53.) The trial court's determination that there was no such agreement finds ample support in the evidence and in our view it was error for the Appellate Term to hold that there was such a contract.

The determination of the Appellate Term should be reversed and the judgment of the Municipal Court in favor of plaintiffs

in the sum of $939.50 affirmed, with costs to plaintiffs in this court and in the Appellate Term.

Dore, J. (dissenting). The issue is whether the Appellate Term correctly determined that defendant's liability as bailee was limited to $25 by the contract between the parties.

Plaintiffs sued for $1,000, the alleged value of a package claimed to contain valuable furs checked with defendant, owner and operator of a parcel check room at the 33rd Street Station, New York, N. Y., of the Hudson & Manhattan Railroad Company. One Ellis testified that plaintiff Sidney Klar had given him thirty mink skins to make into a pair of sleeves and cuffs; that Ellis completed the work, wrapped the valuable furs in a brown paper package tied with a piece of cord, deposited the package in the defendant's parcel room on September 12, 1944, and received a stub or check therefor, which he said he did not read, but delivered to plaintiff Klar the next day.

With that check, Klar came for the package two days later, on September 14th. Defendant's employee admitted that by error an attendant in the checking room had delivered the brown paper package to someone else the day before. Defendant's witness Keber testified that when Klar first discussed the loss of the package he stated the contents were worth between $400 and $450. On the trial, however, plaintiffs testified that the value of the contents was $735, the work $150, making a total of $885. In the Municipal Court, the justice trying the case without a jury granted plaintiffs judgment, with costs, in the sum of $939.50.

On appeal the Appellate Term unanimously reversed the judgment on the ground that defendant's liability was limited to $25, and that the evidence established that such limitation was sufficiently brought to plaintiffs' attention and constituted a contract between the parties. By our permission plaintiffs appeal.

Defendant did not attempt to exempt itself by contract from all liability for negligence, but only to limit its liability to a sum certain. No issue of the bailee's affirmative misfeasance, theft or similar wrongdoing, is presented. But plaintiffs contend that delivery of the package to the wrong person was gross negligence and the limitation of liability was not binding on plaintiffs and is void.

On all the facts and circumstances disclosed in this record, we think the Appellate Term correctly determined that defendant's liability was limited to $25 and that such limitation was sufficiently brought to plaintiffs' attention to constitute a con-

tract. Cases dealing with carrier's and innkeeper's liability and not the type of business conducted by defendant are not here controlling. The parcel check that Ellis received had conspicuously printed the word " Contract " on the face thereof near the top in bold face type, clearly legible in red ink. The word " Contract " in black ink was repeated twice in the express limitation of liability to $25 printed immediately below on the face of the card. The whole form was exceptionally brief. The transaction occurred at 8 A.M. Plaintiffs and their representative had ample opportunity to read the notice on the check stub thus clearly labelled " Contract " and limiting liability to $25 upon " any piece." The package, alleged to contain valuable furs, was tied up with a piece of cord in a brown paper parcel. The charge for checking was the trivial sum of ten cents. The terms expressly provided that in consideration of the low rate of charge, the damages were accordingly limited.

Under all these circumstances we think it not unreasonable to hold that one depositing a package temporarily for such consideration should reasonably expect there would be some limitation on the value that could be claimed for articles so deposited. If made liable without limitation in spite of terms so printed on the check, the owners of parcel check rooms and others in similar relations would be at the mercy of the unscrupulous, and might be called upon to answer for hundreds of thousands of dollars on any of the many small packages deposited for the low charge of ten cents. Under such rule, rates for checking service and other similar services to the public generally would in all likelihood be substantially increased.

While authorities differ on the limitation of liability rule, the cases are decided on their own particular facts and there is no authority in this State which absolutely excludes such limitation of liability, if reasonable and if the depositor has reasonable notice of the limitation so as to be bound by its terms. On the contrary it has been held that a bailee may contract to diminish or enlarge his common-law obligation with respect to the subject of bailment. (*Sun Printing & Publishing Assn.* v. *Moore,* 183 U. S. 642, 654; *Sagendorph* v. *First National Bank of Philmont,* 218 App. Div. 285, 286.)

In *New York Central &c. R. R.* v. *Beaham* (242 U. S. 148) the limitation was on the back of the receipt or check and the claimant did not read it, but the Supreme Court of the United States held: " In the circumstances disclosed, acceptance and use of the ticket sufficed to establish an agreement *prima facie* valid which limited the carrier's liability. Mere failure by the

passenger to read matter plainly placed before her could not overcome the presumption of assent. *Railroad Company* v. *Fraloff,* 100 U. S. 24, 27; *The Kensington,* 183 U. S. 263; *Phineas Fonseca* v. *Cunard Steamship Co.,* 153 Massachusetts, 553."

In *Harris* v. *Great Western Railway Co.* (1 Q. B. D. 515, 530) BLACKBURN, J., after reviewing the English cases, said: " And it is clear law that where there is a writing, into which the terms of any agreement are reduced, the terms are to be regulated by that writing. And though one of the parties may not have read the writing, yet, in general, he is bound to the other by those terms; and that, I apprehend, is on the ground that, by assenting to the contract thus reduced to writing, he represents to the other side that he has made himself acquainted with the contents of that writing and assents to them, and so induces the other side to act upon that representation by entering into the contract with him, and is consequently precluded from denying that he did make himself acquainted with those terms."

Other English cases to the same effect are cited in 18 Lawyers Reports Annotated (N. S.), page 296; see, also, 4 Williston on Contracts, section 1046, Note 6, page 2927.

Similar limitations have been enforced in numerous jurisdictions in this country. (*Terry* v. *Railway Co.,* 81 S. C. 279; *Noyes* v. *Hines,* 220 Ill. App. 409; *Mo. Pac. Transportation Co.* v. *Williams,* 207 Ark. 750; *Mo. Pac. Railroad Co.* v. *Fuqua,* 150 Ark. 145; *Warehouse Co.* v. *Pickering,* 114 Ohio St. 76; see, also, 142 A. L. R. 776.)

In *Noyes* v. *Hines* (*supra*) the court said at page 421: " We think the weight of authority is to the effect that when a person accepts a ticket from a bailee in receipt for a parcel deposited with him, he is bound by the terms and conditions of that receipt in so far as he has reasonable notice of the same, and in so far as the same are reasonable.

" In this case it does not seem to be unreasonable to hold that a person depositing baggage or similar articles temporarily, in the manner as shown by the evidence, and for a consideration of only 10 cents to be paid by him, would expect that there would be some limitation placed upon the value of the article so deposited. If this were not so then the defendant would have been bound if plaintiff had deposited with his suit case $100,-000 worth of diamonds or other articles of similar great value. The condition, therefore, in itself, seems to have been a reasonable one. The notice as to the condition would also seem to have been reasonable. The defendant had a right to assume that the

plaintiff could read the English language; had also a right to assume that the plaintiff would take notice that by reason of the very small charge he could not expect an unlimited liability.''

No New York case on similar facts holds such limitation absolutely void. In *Madan* v. *Sherard* (73 N. Y. 329) the receipt was marked a '' domestic bill of lading '' and the railroad car was so dimly lighted that the plaintiff could not have read the receipt. In *Healy* v. *New York Central & H. R. R. R. Co.* (153 App. Div. 516, affd. 210 N. Y. 646) the limitation of liability was printed on the back of the cardboard in fine print. Indeed, in the *Healy* case it was expressly held that if notice had been given, a different question would have been presented, and the case was decided on the ground that, under the facts disclosed, there was nothing to suggest to a reasonably prudent man '' the existence of such a special contract.''

On all the facts here disclosed, the condition was reasonable, the notice adequate, and failure to read the paper is inexcusable. (*Pimpinello* v. *Swift & Co.*, 253 N. Y. 159, 162.)

Although Klar's place of business was only a few blocks from where Ellis worked, instead of returning the furs to Klar in person as he had originally procured them, Ellis says he checked the valuable furs in the parcel room and thereafter gave the check to Klar. When defendant attempted to clear up this issue by asking what prevented Ellis from delivering the furs to Klar's place of business that morning, the court prevented the inquiry by sustaining plaintiffs' objection. The inquiry was proper as bearing on Ellis's credibility and on the likelihood of his story that he had left valuable furs wrapped in brown paper at a parcel checking room when he could have delivered them to the owner a few blocks away and when he concededly had to give to the same owner the check for the parcel thus deposited.

Accordingly, we dissent and vote to affirm the determination of the Appellate Term modifying the Municipal Court judgment and the judgment of modification entered thereon.

TOWNLEY and GLENNON, JJ., concur with COHN, J.; DORE, J., dissents in an opinion in which MARTIN, P. J., concurs.

Determination of the Appellate Term reversed and the judgment of the Municipal Court in favor of the plaintiffs in the sum of $939.50 affirmed, with costs to the plaintiffs in this court and in the Appellate Term. Settle order on notice. [See *post*, p. 1014.]