*422
 
 Weygandt, C. J.
 

 The question in this case is whether the amount of the defendant’s conceded liability should be $2,000 or $100.
 

 The answer to this question depends on whether there were two contracts or only one between the defendant and Mrs. Olive L. Trebing, the owner of the coat insured by the plaintiff.
 

 There is little dispute as to the operative facts.
 

 After Mrs. Trebing delivered her coat to the defendant she received a “fur storage receipt * * containing the following language:
 

 “Subject to the following terms and conditions:
 

 “1. The liability for loss or damage shall in no event exceed the valuations specified. * * *”
 

 At the suggestion of the defendant a valuation' of $100 for storage purposes was specified therein with the consent of Mrs. Trebing. The defendant knew that Mrs. Trebing had insured her coat with the plaintiff company for the valuation of $2,000 after the defendant had appraised the garment at that figure.
 

 The defendant’s cold storage was located in another building. Mrs. Trebing’s coat was not taken to this storage but was kept in the defendant’s store for the purpose of making the agreed repairs. After some days of delay the work on the coat was completed in the workroom on the second floor of the store. Then the coat was placed on a dumb-waiter connecting the workroom with a vault in the basement. The defendant states that the coat disappeared from the dumbwaiter and has not been found.
 

 The plaintiff insurance company paid Mrs. Trebing for her loss and became subrogated to her claim against the defendant.
 

 The defendant admits its liability in the sum of $100 — the amount mentioned in the storage receipt— but refuses to pay the larger sum for which the coat was insured by the plaintiff.
 

 
 *423
 
 In its opinion the trial court stated:
 

 “The defendant contends that the contract of storage had its inception March 27, 1946. The evidence discloses that the coat was placed in the possession of defendant for an additional purpose — that of altering it to correct an unsatisfactory fit at the shoulders. Since the minds of the parties met upon the desired alterations, they became the subject matter of a contract separate and apart from the contract of storage.”
 

 Similarly the dissenting judge of the Court of Appeals said:
 

 “In respect of the bailment for storage there was a contract limiting liability, while in respect of the bailment for repairs there was no such contract. The garment was lost before it ever reached the place of storage, so that the contract limiting liability for negligence has no application. * * *
 

 “On the admission of the defendant as appears in the record, it was not the custom or practice of the defendant to issue a storage policy limiting liability when a garment was delivered for the purpose of repair or alteration, and none was issued covering the repairs or alteration in this case.”
 

 Those statements express the view of this court to ihe effect that clearly two separate contracts existed between Mrs. Trebing and the defendant — one for storage and another for repairs. For the first, liability was limited to the sum of $100; for the second it was not. Performance of the storage contract never started; otherwise the coat would have been in the cold storage located in the other building. The sole reason the coat remained in the defendant’s store was for the performance of the contract to repair.
 

 Under these circumstances the defendant clearly is liable for the full value of the converted coat.
 

 
 *424
 
 The judgment of the Court of Appeals must be reversed and that of the trial court affirmed.
 

 Judgment reversed.
 

 Zimmerman, Stewart, Middleton, Matthias and Hart, JJ., concur.
 

 Taft, J., not participating.