Stewart, J.
The Court of Appeals held that the storage receipt issued by defendant substantially complied with the Uniform Warehouse Receipts Act (Section 8457 et seq., General Code); that such receipt constituted a contract between Mrs. Bentz and defendant, without an express assent by Mrs. Bentz to the limitation of liability therein contained; and that the liability of defendant was limited to the stated value, namely $100.
Some of the statutes covering the issuance of warehouse receipts in Ohio are:
Section 8457. “Warehouse receipts may be issued by any warehouseman.”
Section 8458. “Warehouse receipts need not be in a particular form, but every such receipt must embody within its written or printed terms:
“1. The location of the warehouse where the goods are stored.
“2. The date of issue of the receipt.
“3. The consecutive number of the receipt.
“4. A statement whether the goods received will be delivered to the bearer, to a specified person, or to a specified person or his order.
“5. The rate of storage charges.
“6. A description of the goods or of the packages containing them.
“7. The signature of the warehouseman, which may be made by his authorized agent.
“8. If the receipt is issued for goods of which the *131 warehouseman is owner, either solely or jointly or in common with others, the fact of such ownership, and
“9. A statement of the. amount of advances made and of liabilities incurred for which the warehouseman claims a lien. * * * ”
Section 8459. “A warehouseman may insert in a receipt, issued by him, any other terms and conditions, provided that such terms and conditions shall not:
“1. Be contrary to the provisions of this chapter. (Sections 8457 to 8509, General Code.)
“2. In any wise impair his obligation to exercise that degree of care in the safekeeping of the goods entrusted to him which a reasonably careful man would exercise in regard to similar goods of his own.”
Section 8463 provides that a nonnegotiable receipt shall have plainly placed upon its face by the warehouseman issuing it the words, “nonnegotiable” or “not negotiable,” and where that is not done a purchaser of the receipt for value thinking it negotiable may treat it as such.
Section 8464 provides that a warehouseman, in the absence of some lawful excuse, is bound to deliver the goods upon demand provided the holder of the receipt offers to pay the warehouseman’s charges and surrender the receipt.
It is argued by plaintiff that the receipt in the instant case, which is not designated a warehouse receipt, does not substantially comply with the warehouse-receipts statutes, and that, because services were to be performed in cleaning the fur coat in connection with the storage, defendant was not thereby a warehouseman, even though it did issue a receipt.
The receipt given by defendant and the terms printed on the back thereof indicate that, as to the fur coat involved in this case, storage was the primary purpose of the bailment.
*132 The courts below relied upon the decision of this court in the case of Central Storage Warehouse Co. v. Pickering, 114 Ohio St., 76, 151 N. E., 39.
In that case Pickering stored with a warehouse company a bundle of rugs worth $200 and at the time the goods were stored was given a warehouse receipt, so designated, which limited the liability of the warehouse company to $25.
The warehouse company was not advised as to the contents of the bundle, at the time it was delivered in storage, or of its value. Pickering’s attention was not called to the paragraph in the receipt which limited the liability of the warehouse company to $25.
This court, in the syllabus, held as follows:
“1. By virtue of the provisions of Sections 8457, 8458, and 8459, General Code, a warehouseman’s receipt in compliance with those sections issued for goods stored, becomes a contract between the parties, and the person receiving and holding such receipt, even though he does not sign the same or otherwise expressly assent to its terms and conditions, is chargeable with knowledge of such terms and conditions, and is bound by the same, provided the same be not contrary to the provisions of those sections and other related sections, and further provided that such terms and conditions do not in any wise impair the obligation of the warehouseman ‘to exercise that degree of care in the safekeeping of the goods entrusted to him which a reasonably careful man would exercise in regard to similar goods of his own.’
“2. Terms and conditions in a warehouse receipt and contract, which limit the responsibility of the warehouseman for any article or package listed on such receipt while in such warehouse or being carted to dr from the same by it to the sum of $25, unless the value thereof is made known at the time of storing, noted on *133 such receipt, and the payment of a higher storage therefor, do not constitute an exemption from liability for want of due care, but constitute a reasonable and enforceable method of fixing a due proportion between the amount for which the warehouseman becomes responsible and the charges collected by him, and for protecting the warehouseman against extravagant valuations in case of loss.”
The judgment in the Pickering case was concurred in by four judges, two judges remaining silent and one judge writing a vigorous dissenting opinion. The dissenting opinion states that a simple insertion in a warehouse receipt as to a limitation of value does not constitute a contract, where such insertion is not assented to by the bailor; and that the provisions of Section 8459, General Code, authorizing but not compelling a warehouseman to insert other terms and conditions in a receipt do not constitute such terms and conditions a contract with the bailor unless they are brought to his attention and he has assented thereto. The dissenting opinion states further:
“* *.* the warehouseman never told the plaintiff or his agent, so far as the evidence discloses, that there was any term in this contract of bailment with regard to valuation of goods in a parcel at higher than $25. The plaintiff was entitled to accept the receipt for what it purported to be, namely, a paper evidencing his title to the goods stored and evidencing his payment of the required storage fees, and is not rightfully bound by this term, of which he was not apprised.”
Assuming that the receipt in the present case substantially complies with the warehouse-receipts statutes, there is one vital difference between the facts of the Pickering case and those in the present one, and that is the time which elapsed between the delivery of Mrs. Bentz’s coat to defendant and the date of the receipt which defendant sent to her.
*134 In the Pickering case, at page 79, it is stated that the receipt in that case was delivered to Pickering at the time the goods were stored, whereas in the present case the fur coat was delivered to the defendant for cleaning and storage on May 5, 1949, but the receipt issued by defendant was dated May 25, 1949, 20 days later, and sent through the mail to Mrs. Bentz who had never signed or read it. There is a complete absence of evidence that the terms of the receipt containing the so-called limitation of liability were ever called to her attention.
In the Pickering case, this court held that under the Warehouse Receipts Act a limitation of liability in a receipt which is delivered at the time of the storage of the goods constitutes a contract.
Some of the members of this court are of the opinion that if the exact facts of the Pickering case should again come before the court the judgment therein should be re-examined, but we are of the opinion that that judgment must be confined to those facts.
In the present case the receipt, which it is alleged constituted a contract and not a mere memorandum of a previous agreement, was issued 20 days after the delivery of the coat to defendant, and, for aught that appears in the record, there is no evidence as to the whereabouts of Mrs. Bentz’s coat during that time, after she handed it over to the delivery company when everything about the coat was obvious, as distinguished from the bundle in the Pickering case, the contents of which, according to the opinion, were not known to the warehouseman. In the instant ease, the coat may well have been lost or damaged before the warehouse receipt was issued, and the receipt might be considered as an attempted limitation of liability with reference to property which had already disappeared.
The exact situation was presented in the case of *135 Voyt v. Bekins Moving & Storage Co., 169 Oregon, 30, 83, 119 P. (2d), 586, 127 P. (2d), 360. In that case a trunk filled with sterling silver alleged to be worth thousands of dollars was delivered to a warehouseman and a receipt containing an agreed-valuation provision was sent to the bailor about two weeks after the goods had been accepted by the warehouseman. The court held that the bailor was not bound by the warehouse receipt, for the reason that the limitation-of-liability provision was invalid in the absence of evidence that she had signed or otherwise approved the terms thereof.
The Piclcering case is criticized in the Vogt case, and it is conceded that the former is not in accord with the weight of authority.
The general rule with reference to the situation presented in the present case is stated in 160 A. L. R., 1117, as follows:
“It frequently happens that a warehouse receipt containing a clause limiting the warehouseman’s liability is not given to the bailor simultaneously with the acceptance of the goods by the warehouseman but is sent to him at a later time, and the question then arises whether the bailor is bound by this clause regardless of the fact that he has no actual knowledge thereof.
‘ ‘ Contrary to the situation where the warehouse receipt is given at the same time the goods are received (see supra, III), the question whether a bailor is bound by a limitation of liability clause which is contained in a warehouse receipt given to him after the goods have been stored with the warehouseman and of which he has no actual knowledge has been answered by the courts several times. The general rule seems to be that where at the. commencement of the bailment no mention of the stipulation limiting the liability of the *136 warehouseman is made, the contract cannot subsequently be changed by provisions in the warehouse receipt without the consent of the bailor.” (Citing many cases.)
In the present case reference is made to the cases of Agricultural Ins. Co. v. Constantine, 144 Ohio St., 275, 58 N. E. (2d), 658, and Lumbermen’s Mutual Ins. Co. v. F. Z. Cikra, Inc., 155 Ohio St., 421, 99 N. E. (2d), 81.
In the Constantine case, this court did not apply the Warehouse Receipts Act, the delivery of an automobile having been treated simply as a bailment and there being an attempt to exempt the bailee from all liability to the bailor.
In the Cikra case, which also involved a loss of furs, there was evidence that the furs were lost during repairs, which loss was covered in a separate contract from the one for storage, and the Warehouse Receipts Act was not applied.
Since in the present ease no receipt containing a limitation of liability was given to Mrs. Bentz by defendant at the time of her storage of the goods, defendant could not, 20 days later, bind her to such a limitation of liability, where she had no knowledge of such attempted limitation and never assented thereto.
The judgment of the Court of Appeals is reversed and the cause is remanded to the Common Pleas Court for entry of judgment for plaintiff in accordance with this opinion.

Judgment reversed.

Weygandt, C. J., Middleton, Taft, Matthias, Hart and Zimmerman, JJ., concur.