GULF COMPRESS COMPANY *v.* HARRINGTON.

Opinion delivered May 3, 1909.

1.  CONTRACTS—CONSTRUCTION.—A receipt issued by a compress company and couched in language selected by it should be most strongly construed against it. (Page 258.)

2.  BAILMENT—STIPULATION AS TO LIABILITY.—A stipulation in a compress company's receipt that it is "not responsible for loss by fire, acts

of Providence, natural shrinkage, old damages, or for failure to note concealed damage," should not be construed to exempt the company from liability for fire occasioned by its negligence. (Page 259.)

3. SAME—NEGLIGENCE.—Evidence tending to prove that defendant compress company negligently kept a quantity of loose cotton in a warehouse exposed to fire from passing locomotives and that plaintiff's cotton was destroyed in this manner was sufficient to justify a finding that defendant was negligent in exposing plaintiff's cotton to this danger. (Page 260.)

Appeal from Pulaski Circuit Court, First Division; *Robert J. Lea,* Judge; affirmed.

*Rose, Hemingway, Cantrell & Loughborough,* for appellant.

Whether a contract is void because opposed to public policy is a question of law for the court. Greenhood on Public Policy, p. 123. Courts are slow to declare a contract to be against public policy. 40 Ark. 261; 6 E. & B. 47; 4 H. of L. Cas. 1. Public policy requires that men have the utmost liberty of contract. 57 N. W. 844. Contracts exempting from loss by fire are not against public policy. 62 Fed. 904. Railroads may under some circumstances contract against liability for damage. 56 Mich. 111; 66 Fed. 506; 129 *Id.* 774; 176 U. S. 498. The agreement of the parties overrides the law. 48 Ark. 460.

*Moore, Smith & Moore,* for appellee.

Business affected with a public interest is subject to legislative control. 94 U. S. 113. The business of handling and storing grain for hire is affected with a public interest. 143 U. S. 547; 153 *Id.* 399. When a business is affected with a public interest, it is against public policy to permit it to contract against liability for loss by fire caused by its own negligence. 47 Ark. 97; 39 *Id.* 148; 44 *Id.* 208; 17 Wall. 357. Parties can not make a contract that injuriously affects the public interest. 48 Ark. 467.

*Rose, Hemingway, Cantrell & Loughborough,* in reply.

A compress company is not a public service corporation. 48 So. 479.

McCULLOCH, C. J. The plaintiff, W. E. Harrington, was the owner of thirty-four bales of cotton which were destroyed by fire while held for storage by the defendant, Gulf Compress Company, in its warehouse at Little Rock, Arkansas. He sued the defendant for the value of the cotton, and seeks to establish

liability on the alleged ground that the latter was guilty of negligence in permitting destruction of the cotton by fire, and he recovered a judgment for damages from which the defendant prosecutes this appeal.

Learned counsel raise only two questions in the argument here, viz.: (1) that defendant is not liable because it contracted against liability for loss by fire caused even by its own negligence, and (2) that there is not sufficient evidence to warrant a finding that its servants were guilty of any negligence which caused the fire.

The briefs on each side contain interesting and very instructive discussions of the question whether or not it is contrary to public policy to permit a concern operating a compress and receiving cotton for storage and compression, which is said to be a business of a public or quasi-public nature or a business "affected with a public interest," to contract against liability to patrons for damages caused by its own negligence.

But the first question to be decided is whether or not the defendant in this case did, in fact, contract against such liability; for, until we settle that question in the affirmative, it is unnecessary to go further.

The written receipts executed by defendant to plaintiff for the cotton when delivered to it, and which constituted the contract between the parties, are in the following form:

"Received on account of W. E. Harrington one bale of cotton marked as stated herein, on storage, to be delivered to bearer only upon the return of this receipt and the payment of all advances and such charges as may have accrued under the current tariff of this company. Not responsible for loss by fire, acts of Providence, natural shrinkage, old damage, or for failure to note concealed damage."

It will be observed that nothing is expressly said in the receipt about exemption from liability for negligence. It provides in general terms that there shall be no responsibility "for loss by fire, acts of Providence, natural shrinkage, old damages or for failure to note concealed damages."

Does this exemption include negligence of the obligor?

The receipt issued is in the form prepared by the defendant itself, the exemption set forth therein is couched in language of

its own selection, and, according to well-settled rules of interpretation, should be construed in the strongest light against it.

Judge Thompson, in his work on Negligence (vol. 1, § 1143), says that "there is a tendency of the law to discountenance stipulations in contracts between parties whereby one of the parties undertakes to exempt itself from liability for his own negligence," and that this tendency is discovered in decisions of the courts declining to construe provisions in contracts so as to bring them within such exemption, even in cases where public policy would not forbid it if clearly expressed.

In *Railton* v. *Taylor*, 20 R. I. 279, 39 L. R. A. 246, it was held (quoting from the syllabus) that "the lessor's own negligence in the management and use of that part of the premises remaining in his control, including the heating apparatus, is not within a stipulation that he shall not be liable for any loss to property on the premises if 'destroyed or damaged by fire, water, or otherwise, or by the use or abuse of the Chochituate water, or by the leakage or breakage of water pipes, or in any other way or manner.'"

It has been held in many cases that a receipt given by a warehouseman stipulating that goods are received at "owner's risk" does not exempt from damage caused by negligence. *Denver Public Warehouse Co.* v. *Munger,* (Col.) 77 Pac. 5; *Hunter* v. *Baltimore P. & C. S. Co.,* 75 Minn. 408; *Collins* v. *Burns,* 63 N. Y. 1; *Herzig* v. *N. Y. Cold Storage Co.,* 115 N. Y. App. Div. 40. In the Colorado case above cited the court said: "Contracts against liability for negligence are not favored by the law. In some instances, such as common carriers, they are prohibited as against public policy. In all such cases such contracts should be construed strictly, with every intendment against the party seeking their protection."

The case of *Dieterle* v. *Bekin,* 143 Cal. 683, is precisely in point. There the warehouseman's receipt stipulated that there should be "no liability for fire, etc.," but it was held that this did not exempt him from liability for fire caused by negligence; the court saying: "Such a contract should not be construed so as to excuse a bailee from the exercise of ordinary care to protect the property from fire."

It may be argued that this construction entirely emas-

culates the stipulation and renders it meaningless, for the reason that even without it there is no liability on the part of the warehouseman for loss by fire unless the same be caused by negligence. That may be true, but, even without a stipulation of exemption, there is no responsibility on the part of the warehouseman for loss on account of "acts of Providence, natural shrinkage, old damage or for failure to note concealed damages," and yet the receipts contain a stipulation exempting from liability for those causes. A warehouseman is no insurer against damage to property held for storage, and is liable only for damage caused by negligence.

But this argument affords no reason for importing into the contract a stipulation for exemption from liability for negligence which the parties themselves have not seen fit to express in apt words—a stipulation, too, which the law at least discourages when it does not positively forbid. If a stipulation against liability for negligence had been intended, we must assume that it would have been more aptly expressed in the contract. We hold that the contracts in question do not contain such exemption.

Does the evidence sustain a finding of negligence on the part of the defendant which caused the destruction of the cotton?

The warehouse was located contiguous to railroad tracks along which engines were frequently passing. A large lot of loose, unbaled cotton was kept there through which fire, if once communicated, would spread rapidly and invade the whole premises. There were holes and cracks in the corrugated iron wall of the shed on the side next to the railroad tracks. A door was permitted to get out of repair and remain so for a considerable time, so that it could not be closed. It is claimed that in this way the property in store was kept in close proximity to the more highly inflammable loose cotton, and that the whole was exposed, on account of the open door and holes in the wall, to danger from sparks escaping from passing locomotives. There was evidence to the effect that about twenty minutes before the fire was discovered an engine passed along by the warehouse, puffing very hard. The fire is not otherwise accounted for, and, considering all the circumstances, we are of the opinion that the jury had the right to infer that the fire was communicated from the passing engine, and to find that the defendant was negligent

in exposing the stored cotton, without proper protection, to this danger. *St. Louis, I. M. & S. Ry. Co.* v. *Coombs,* 76 Ark. 132.
    Affirmed.