[Civ. No. 12252. Third Dist. Jan. 12, 1971

LINCOLN GRAIN COMPANY et al., Plaintiffs and Appellants, v. M & H WAREHOUSE et al., Defendants and Respondents.

---

## Counsel

Weis & Huckins, Long & Levit, Bert W. Levit, John B. Hook and Allan R. Moltzen for Plaintiffs and Appellants.

Steel & Arostegui, Albert J. Arostegui and Timothy J. Evans for Defendants and Respondents.

## OPINION

BRAY, J.*—Plaintiffs in an action for damages sustained by them to grain in a fire in defendants' warehouse appeal from judgment in favor of defendants.

### QUESTIONS PRESENTED

1. Is a warehouseman's burden of proving due care satisfied under California law existing at the time of the fire without proving how the fire started?

2. Instructions:

   (a) Failure to instruct that defendants must explain the cause of the fire.

   (b) Instructions on reasonable care.

   (c) Instructions on unavoidable accident.

3. Admissibility of state inspector's report record.

### RECORD

On November 8, 1965, plaintiffs filed a complaint against defendants for damages by fire to grain stored in defendants' warehouse on two theories, breach of duty by a bailee and negligence. Defendants answered denying the charging allegations of the complaint. They also filed a cross-complaint against third parties, claiming any damages suffered by plaintiffs were caused by the negligence of the cross-defendants.

The trial was bifurcated and the issue of liability was separated from that of damages and tried first. The jury found in favor of defendants.

### FACTS

There is little, if any, conflict in the evidence. Plaintiffs stored grain in defendants' warehouse. On December 9, 1964, a fire started in the warehouse, burned for several days and destroyed a portion of the grain. No witnesses were produced who could testify to what caused the fire. The fire was discovered at 7:03 a.m. It started at the top of the elevator building where no milo grain was stored.[1]

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

[1] R. W. Jones, the owner of the warehouse company, expressed an opinion that the fire was caused by spontaneous combustion. However, this opinion was stricken from

Arthur Amarel, the dryer operator, went up into the elevator building about 10:30 p.m. the evening before the fire to see if there was any storage room and found no evidence of fire. There were no motors running. The same evening, following standard procedure, the night watchman checked all switches to determine that there was no power on. There was not. A 15 to 20 mile-per-hour wind, present on the day of the fire, created a small swaying at the top of the dryer which could have caused rubbing of metal on metal.

Early the morning of the fire the watchman, who stayed in a trailer parked on the premises, entered the control room at the bottom of the elevator building and switched off the exterior lights. He smelled no smoke and saw no evidence of fire. A short time after he left the building he saw smoke at the top.

When notified of the fire, Mr. Amarel went to the warehouse immediately and saw smoke coming out the top of the building. He climbed about 30 feet into the elevator building. Although the area above him had burst into flames, he saw no smoke at the bottom of the building.

Defendants' defense was basically that they had kept the warehouse machinery in good order.

Robert W. Jones, who has been involved in the grain business since 1946, testified that dryer operators and warehousemen working with milo grain are constantly faced with the hazard of fire, that there is always danger of spontaneous combustion. Roland Hanschu, operator of a dryer and warehouse for 18 years, Frank Lindsay, with 15 years in the business, and Frank L. Clark, with over 20 years' experience, testified to the same effect.

Without detailing the evidence, it appeared that every reasonable effort was made to maintain the cleanliness and efficiency of the operation, nor was any evidence offered by plaintiffs to controvert the fact that defendants operated a clean and orderly dryer and warehouse and took reasonable steps to eliminate the fire threat endemic in the handling of milo grain. Plaintiffs do not question these facts but take the position that in order to meet the burden of proving freedom from negligence a warehouseman must show how the fire started so it may be determined what steps had been taken to safeguard against that particular cause.

The chief of the Sutter Fire Department, Robert Ziegenmeyer, with 19 years' fire-fighting experience (75-80 fires a year or more), testified that eliminating all other possibilities and assuming the presence of dust and chaff,

the record on the ground that his competency to testify as to the cause of the fire was not shown.

an elevator with leather belting and metal buckets and a windy and rainy morning, as this one was, which could cause items to rub against each other—the foregoing elements would be sufficient to cause a fire. Under these conditions it takes very little in the way of heat to cause a fire and heat alone, rather than a spark, would be sufficient.

Thus, the jury had before it evidence of the apparently reasonable care exercised by defendants; that the fire started in an area in which no grain was present and in which no power had been on for several hours; the presence of all the elements necessary for spontaneous combustion at the time and place where the fire started and no contrary evidence.

### 1. *Must there be evidence of how the fire started?*

Boiled down, as stated, plaintiffs' contention is that lack of negligence cannot be shown unless the cause of the fire appears.

It is conceded that at the time in question, after a prima facie case is made out showing the delivery of goods into the possession of the warehouseman and the destruction or damage of the goods by fire, the warehouseman had the burden of proving that he was *not* negligent.

The leading case on this subject is *George* v. *Bekins Van & Storage Co.* (1949) 33 Cal.2d 834 [205 P.2d 1037], in which Justice Traynor reviews at length the California authorities on the subject and lays down the rule "that in cases governed by the provisions of the uniform act[2] the burden of proving that the goods were not lost because of negligence is on the defendant, whether plaintiff frames his complaint on a negligence or a breach of contract theory." (P. 841.)

In that case, as in the one at bench, the bailor's goods were destroyed by fire in the warehouse where stored. As here, the defendant there introduced evidence to show lack of negligence but did not show how the fire started. In affirming a judgment in favor of the plaintiff, the court said, "Defendant cannot explain the fire, and the fact that it enforced rigid rules to prevent fire does not preclude as a matter of law a finding that it was at least as probable that the fire was caused by negligence on the part of defendant or its employees as by a cause for which defendant would not be legally responsible." (P. 839.) In that case, the trial court had rendered judgment in favor of the plaintiffs. The Supreme Court affirmed the judgment (modifying the amount of damages awarded). The fire started on a well-lighted aisle near the second floor toilet, a floor to which no unauthorized persons were allowed and a place as to which defendant had a rigid

---

[2]The Uniform Warehouse Receipts Act was in force at the time of the fire in the instant case. It was later replaced by the Uniform Commercial Code.

rule against smoking. The Supreme Court said (at p. 838), "it seems probable that the fire was started by some person on the second floor, either deliberately or as a result of negligence." The effect of the case is that where the cause of fire is unknown it cannot be said as a *matter of law* that the cause of the fire was one for which the defendant would not be legally responsible; the determination of the trier of fact that the defendant had not exercised due care was not disturbed on appeal.

*Hanson v. Wells Van & Storage Co.* (1950) 100 Cal.App.2d 332 [223 P.2d 509], likewise was an action for damages for loss by fire of goods stored in a warehouse. The reviewing court applied the above rule of the *George* case. No known cause of the fire was shown. In affirming the judgment for the plaintiff, the court said at page 334, "The fact that the cause of the fire is unknown is not sufficient to support appellant's [the owner of the warehouse] burden of proof of due care." As in *George, supra,* the reviewing court was reviewing an appeal from the trial court's finding "that the evidence 'affirmatively shows negligence on their part [the warehouse owners]. . . .'" (P. 334.)

*Hanson* was cited with approval in *Shockley v. Tennyson Transfer & Storage* (Idaho 1955) 278 P.2d 795, 797, a case involving destruction of goods in a warehouse fire. The warehouseman had complied with all safety regulations and had inspected the building the night before the fire occurred. The origin of the fire was unknown. The warehouseman was held liable for the loss of the goods, the court stating, "Establishing that the origin of the fire is unknown is not sufficient in itself to free the warehouseman from liability."

Neither *George, Hanson* nor *Shockley, supra,* hold that in order for the warehouseman to prove due care he must prove the cause of the fire. They hold, in effect, that despite the fact that the cause of a fire is unknown, the trier of the fact must determine whether or not the evidence shows that, considering all the possible sources of the fire, the warehouseman has met his burden of showing due care. So, in the instant case, the jury found that in view of the possible causes of the fire, the defendants proved due care. To upset the verdict this court would have to hold as a matter of law that the evidence did not so show. We cannot do that.[3]

---

[3]Section 7403 of the Commercial Code was adopted by Statutes of 1963, chapter 819, effective January 1, 1965. (This case was tried in November 1968.) The amendment places the burden of proving negligence of the warehouseman on the person storing goods in the warehouse. This case was tried under the theory stated in section 12 of the Uniform Warehouse Receipts Act before the adoption of section 7403, that in case of damage or destruction by fire of goods stored in a warehouse, the warehouse owner had the burden of establishing freedom from negligence.

In the instant case, a great amount of evidence was introduced by defendants to support their contention that they used due care in running their warehouse. They maintained the machinery in good condition, not skimping when repairs were required. When prior to the fire in question spot fires occurred, they followed the advice of the Pacific Gas and Electric Company experts and installed a tunnel that drew in fresh air from the outside. Mr. Amarel was employed to maintain normal maintenance every night and grease the machines for the next morning. He carried out his chores as instructed, and the night before the fire he inspected the warehouse. Nothing was observed which would alert him to the occurrence of a fire. No signs of fire could be seen in the early morning.

The warehouse was found to be in a clean condition by persons who dealt with defendants. Although some chaff and dust were most likely to be in the area of the fire, this condition is inevitable and cannot be prevented when a warehouse is, as here, drying milo grain. The evening before the fire, and possibly the whole day before, no motors were running and no power was on in the warehouse. The day of the fire was windy and stormy, which could cause metal to rub on metal. The warehouse roof was of wood, with some galvanized sheeting, while the elevator was a belt with steel buckets. The fire chief, testifying as an expert, said that very little heat could have caused a fire: "[such fires] just seem to happen without reason." Plaintiffs offered no evidence to controvert defendants' evidence of due care. As the California law now stands a warehouseman may make a showing of due care against the possible causes of fire without being required to show the actual cause of the fire. If a jury believed (as it did in this case) that the warehouseman has exercised due care to prevent fire, the warehouseman has met his burden of proof.

2. *Instructions:*

(a) That defendants must prove the cause of the fire.

The court declined to give plaintiffs' two instructions to the effect that defendants had to explain the cause of the fire. The court did instruct that defendants had the burden of proving lack of negligence. ■ As we have hereinbefore shown, a warehouseman's burden of proving due care does not require him to prove the cause of the fire where the cause is unknown. Hence, the court properly refused to give the proffered instructions.

(b) Reasonable care.

Plaintiffs complain of the giving of two instructions based on sections 1858e and 1858.30 of the Civil Code as they existed prior to January 1,

1965. The instructions state that a warehouseman is not responsible for damage or loss to property in his care by fire, "if he exercises reasonable care and diligence for its protection and preservation," but that he is liable for "any loss or injury to the goods caused by his failure to exercise such care in regard to them as a reasonably careful owner of similar goods would exercise, but he shall not be liable for any loss or injury to the goods which could not have been avoided by the exercise of such care."[4]

Plaintiffs' objection to these instructions is based upon its erroneous contention that the warehouseman has a burden of showing the cause of the fire. Plaintiffs have cited no authority holding that the warehouseman has any greater duty than that set forth in the above instructions and sections.

(c) *Unavoidable accident.*

■ The court in BAJI No. 134 defined unavoidable accident and instructed that "no one may be held liable for an injury resulting from an unavoidable accident." This was error. See *Butigan* v. *Yellow Cab Co.* (1958) 49 Cal.2d 652 [320 P.2d 500, 65 A.L.R.2d 1],[5] concerning whether the error in giving such instruction is to be considered prejudicial. The court there said (at pp. 660-661): "The determination whether, in a specific instance, the probable effect of the instruction has been to mislead the jury and whether the error has been prejudicial so as to require reversal depends on all the circumstances of the case, including the evidence and the other instructions given. No precise formula can be drawn." Here, as there is no affirmative evidence that the fire was caused by any negligence of defendants, and the court instructed on proximate cause what constituted negligence and placed on the defendants the burden of proving freedom from negligence, the error in giving the instruction was not prejudicial.

3. *State inspector's report.*

■ Plaintiffs complain of the admission in evidence of a report of a state inspector concerning the condition of the warehouse. While it apparently was admitted, it was done in the absence of the jury, as was the discussion concerning it. Not having been brought to the attention of the jury,

---

[4]These sections have been superseded by section 7204 of the Commercial Code which sets forth the same rule.

[5]Where a divided court held such instruction erroneous, overruling a number of cases which approved the instruction as helping the jury to comprehend the real issue of negligence and proximate cause.

■

if there were error in admitting it, it could not possibly have been prejudicial.

Judgment is affirmed.

Pierce, P. J., and Regan, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied March 9, 1971.