**DRESSER INDUSTRIES, INC.,**
Appellant,

v.

**FOSS LAUNCH AND TUG COMPANY**
and James V. Arness, d/b/a Arness
Terminal, Appellees.

No. 2396.

Supreme Court of Alaska.

Feb. 25, 1977.

Kenneth P. Jacobus, Hughes, Thorsness, Gantz, Powell & Brundin, Anchorage, for appellant.

Robert L. Eastaugh, Delaney, Wiles, Moore, Hayes & Reitman, Inc., Anchorage, for appellee Foss Launch & Tug Co.

James Arness in pro per.

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, ERWIN and BURKE, JJ.

## OPINION

BOOCHEVER, Chief Justice.

This appeal from summary judgment involves the interpretation of an insurance allocation provision in a storage agreement and the effect of that provision on a bailee's liability for allegedly negligent acts and omissions.

In October 1965, Magcobar, the predecessor of Dresser Industries (Dresser), con-

tracted with James V. Arness, the predecessor of Foss Launch and Tug Company (Foss) and James V. Arness, doing business as Arness Terminals, for the storage of Magcobar's bulk ground barite in a former Liberty ship belonging to Arness. The ship was permanently beached at Nikiski, Alaska. Paragraph 5 of the storage agreement concerned insurance coverage and provided:

> MAGCOBAR shall be responsible for providing its own insurance coverage on the ground barite stored in the Storage Vessel.

Pursuant to the agreement, Magcobar obtained all risk insurance. When it succeeded to Magcobar's interest, Dresser also maintained all risk coverage on the barite.

In February 1970, it was discovered that the deck of the hold containing the barite had collapsed. Part of the barite was lost in the sea, and the remainder was damaged by moisture. Dresser alleged actual losses of $86,250.00 and lost profits in the amount of $86,445.00. Under the terms of its policy, the Insurance Company of North America (I.N.A.) was required to pay Dresser $81,250.00; the first $5,000.00 of the loss was borne by Dresser as a deductible.

Representing itself and the subrogated interest of I.N.A., Dresser filed an action against Foss and Arness (defendants) to recover the total loss. The complaint was based on several counts of negligence.[1] In their separate answers, defendants relied on paragraph 5 as an affirmative defense, asserting that Dresser's policy had been obtained for the mutual benefit of the parties.[2]

The trial court agreed with defendants' contention. Accordingly, it denied Dresser's motion for partial summary judgment and granted defendants' cross-motion. It concluded that the coverage was intended for the benefit of both parties and that,

---

1. Specifically, Dresser claimed negligence in the design, construction and inspection of the hold and modifications made to it, and also relied on defendants' failure as warehousemen to furnish a safe place to store the barite.

2. Additionally, defendant Foss filed a third party complaint against I.N.A. Foss alleged that it was an additional insured under Dresser's policy and was therefore entitled to a defense and to indemnification in the event it was found liable.

even assuming defendants' negligence, it had the effect of satisfying Dresser's present claims. Examining the language of paragraph 5, we come to the opposite conclusion.[3]

 The contract at issue in this case created a bailment between Dresser's predecessor, as bailor, and the predecessor of Arness Terminals, as bailee. Normally, a bailee is liable for any loss or injury to the bailed goods caused by his failure to exercise the degree of care of a reasonably careful owner. Ordinarily, defendants would be liable for damage to the ground barite which was caused by their own negligence,[4] but not for damage unattributable to their fault.

 We have recognized, however, that the general rule may be modified by a contractual agreement between the parties.[5] Thus, liability can be allocated as the parties see fit so long as the contractual provision is not unconscionable. The parties can also provide by express terms that one party is responsible for procuring full insurance for the benefit of both parties. In such a case, that party becomes responsible for the total risk of loss by affirmative-

ly undertaking the duty to provide full insurance coverage for the mutual benefit of the parties.[6] The question presented by the case at bar is whether paragraph 5 constituted such an agreement to provide insurance for the benefit of both contracting parties, thus indemnifying defendants from liability for their alleged failure to exercise reasonable care.

 In our view, the language of paragraph 5 is clear and unambiguous. We do not think it reasonable to infer that the coverage was meant to cover the defendants for their own negligence. Under the terms of the agreement, Magcobar was responsible for securing its *own* insurance. The provision does not speak to the question of losses caused by defendants' own negligence, and had the parties intended to absolve the bailee from such liability, they could have explicitly so provided.

 We agree with the substantial authority requiring that provisions exempting a party from liability for the party's own negligence must be clearly set forth.[7] For reasons of public policy, courts have refused to exempt the bailee from liability when the

---

3. The meaning to be given the words of a contract is a question of law. *A & G Const. Co., Inc. v. Reid Brothers Logging Co., Inc.,* 547 P.2d 1207, 1212 (Alaska 1976); *National Bank of Alaska v. J.B.L.&K. of Alaska, Inc.,* 546 P.2d 579, 586 (Alaska 1976). Thus, in a case such as this, where there exists no genuine issue of material fact, we are not limited by the trial court's construction of the questioned contract language.

4. *Graham v. Rockman,* 504 P.2d 1351, 1354 (Alaska 1972); *Barlow Upholstery & Furniture Co. v. Emmel,* 533 P.2d 900, 901 (Utah 1975); *Lincoln Grain Co. v. M & H Warehouse,* 14 Cal.App.3d 275, 92 Cal.Rptr. 100, 102 (Cal.App. 1971); *Newman v. Clayton F. Summy Co.,* 133 F.2d 465, 467 (2d Cir.1942); 8 C.J.S. *Bailments* § 27 (1962). In Alaska, once loss or damage to the bailed property is shown, the burden shifts to the bailee to explain the cause. *Burgess Const. Co. v. Hancock,* 514 P.2d 236 (Alaska 1973); *State v. Stanley,* 506 P.2d 1284 (Alaska 1973); *Graham v. Rockman, supra* at 1353.

5. *Graham v. Rockman, supra* at 1354. *See also* 8 Am.Jur.2d Bailments § 130, at 1024–25 (1963).

6. *See, e.g., Monsanto Chemical Co. v. American Bitumuls Co.,* 249 S.W.2d 428, 431 (Mo. 1952). There the court, relying on extrinsic evidence, construed a contractual provision concerning insurance to preclude a negligence action brought by a bailor against his bailee, holding under the language and circumstances of that case, that the insurance was for the mutual benefit of the parties. The clause in question specified that Monsanto provide insurance coverage for "all stocks of materials" which were bailed. The agreement did not specify that the insurance would be for Monsanto's "own" coverage as here. We find that case to be distinguishable and not controlling.

7. *See Howey v. United States,* 481 F.2d 1187, 1192 (9th Cir. 1973); *Northwest Airlines, Inc. v. Alaska Airlines, Inc.,* 351 F.2d 253 (9th Cir. 1965); *California & Hawaiian Sugar Ref. Corp. v. Harris County Houston Ship Channel Nav. Dist.,* 27 F.2d 392, 394 (S.D.Tex.1928); *Middleton v. Cato,* 251 Ark. 745, 474 S.W.2d 895, 898 (1972). *See also* Annot., 175 A.L.R. 8, 30 (1948).

bailment is at the bailor's "own risk," but there is no provision concerning the bailee's own negligence. In *Gulf Compress Co. v. Harrington*, 90 Ark. 256, 119 S.W. 249, 250 (1909), for example, the court stated:

> A warehouseman is no insurer against damage to property held for storage, and is liable only for damage caused by negligence. But this argument affords no reason for importing into the contract a stipulation for exemption from liability for negligence which the parties themselves have not seen fit to express in apt words—a stipulation, too, which the law at least discourages when it does not positively forbid. If a stipulation against liability for negligence had been intended, we must assume that it would have been more aptly expressed in the contract.[8]

■ While *Gulf Compress, supra,* and *California & Hawaiian Sugar, supra,* do not involve exemptions for liability through allocation of insurance coverage and were not decided by summary judgment, we nevertheless find them persuasive. Based on the rationale and policy expressed in those cases, we do not find an ambiguity in the failure of this contract to discuss the bailee's liability. We hold that a provision requiring Magcobar to provide its "own insurance" does not absolve the defendants from liability for negligence. Given the general rule of liability applicable to bailments, we believe that this result is consistent with " 'the sense in which the party using the words should reasonably have apprehended that they would be understood by the other party,' and the meaning which

the recipient of the communication might reasonably have given to it."[9]

In *National Bank of Alaska v. J.B.L.&K. of Alaska*, 546 P.2d 579, 584–86 (Alaska 1976), we held that although normally the court looks to extrinsic evidence only in the event of ambiguity, such evidence may also be relied on to determine, in the first instance, whether an ambiguity exists. In this case, we have carefully reviewed the record, and we note that our conclusion that paragraph 5 is clear and unambiguous is not altered by the extrinsic evidence, even when viewed most favorably to the defendants.

Defendants argued that the amount of the $250.00 monthly rental fee was inconsistent with an all risk insurance premium of $471.33 per month. This argument is unpersuasive. It focuses solely on all risk insurance and neglects the possibility of securing more limited and possibly less costly liability coverage. Such liability insurance would not be entirely duplicative of the all risk coverage obtained by Dresser under the terms of the agreement and might additionally protect Foss and Arness from claims of third parties under their obligation to indemnify Dresser from such claims.[10]

■ Defendants advance a final argument based on estoppel. They claim that they detrimentally relied on the language of paragraph 5 by failing to procure additional coverage and that, therefore, Dresser should be barred from bringing this action. A finding of estoppel is proper only where a party has reasonably relied on the words or actions of another.[11] Since we find that paragraph 5 is not reasonably susceptible to

8. *See also California & Hawaiian Sugar Ref. Corp. v. Harris County Houston Ship Channel Nav. Dist.,* 27 F.2d 392, 394 (S.D.Tex.1928); *Middleton v. Cato,* 474 S.W.2d 895, 898 (Ark. 1972).

9. *Day v. A & G Construction Co.,* 528 P.2d 440, 445 (Alaska 1974), *quoting* 4 Williston, The Law of Contracts § 603, at 344 (3d ed.1961) (footnotes omitted).

10. Paragraph 8 of the agreement provides:
8. Arness shall indemnify and hold Magcobar [Dresser's predecessor] harmless from any lia-

bility arising from the acts or omissions of Arness, its agents or employees in the performance of this agreement.
This provision would normally require defendants to obtain liability insurance in any event, and, presumably, the cost of this coverage is reflected in the rental price.

11. *See Slaymaker v. Peterkin,* 518 P.2d 763, 766 (Alaska 1974) (quoting § 90 of the Restatement of Contracts); *Bank of Fairbanks v. Kaye,* 227 F.2d 566, 567 (9th Cir. 1955).

the construction advanced by Foss and Arness, we reject this last contention. Accordingly, we reverse the decision below and remand the case for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.

ERWIN, Justice, dissenting.

I would affirm the decision of the trial court. In my opinion paragraph 5 of the storage agreement, which required Magcobar to provide its own insurance, represents an agreement modifying the general rule of bailee liability. That modification should act to prevent appellant from recovering in the present action.

Such an agreement is clearly for the benefit of both parties, for each party has an insurable interest in the property. The mutual benefit of the agreement to the parties was reflected in the rental amount set. Magcobar was to pay appellees only $250.00 monthly rent. If appellees had obtained all-risk insurance, their premium would have been $471.33 per month. It seems reasonable to me to conclude that the rent was set so low because the appellant, rather than the appellees, was responsible for obtaining insurance.

The effect of the agreement was to cover all losses, even those which resulted from the negligence of appellees. I find the rationale of the majority to be unpersuasive. If two parties to a contract each have an insurable interest and one of them contracts to provide insurance, the likely intent of the parties is that the insurance provided will cover all forms of loss. Prudent business judgment mitigates against a conclusion that both parties should pay premiums to insure the same property. The majority opinion simply says that the parties to a contract should spell out in detail the former result if that is their intent. It appears to me that they did, particularly when the storage agreement is viewed in the light most favorable to appellees, as it must be because it was drafted by Magcobar.

The reasoning in *Monsanto Chemical Co. v. American Bitumuls Co.*, 249 S.W.2d 428 (Mo.1952), is persuasive on this issue. I find it to be more in line with the reasoning adopted by this court in the analogous situation of indemnity clauses. In *Manson-Osberg Co. v. State of Alaska*, 552 P.2d 654, 659 (Alaska 1976), we stated that

[t]he better rule in modern cases, is that the unambiguous language of an indemnity clause as "reasonably construed" should be given effect, even if it does not contain words specifying indemnity for the indemnitee's own negligence. In modern commerce, indemnity clauses are no longer so unusual as to require such specific mention of the indemnitee's conduct as being within the scope of the indemnifying obligation. (Citations omitted)

I find the unambiguous language of paragraph 5 of the storage agreement, as "reasonably construed," to include losses due to appellee's negligence within the scope of appellant's obligation to obtain insurance. Therefore, I would affirm the decision of the trial court.