ion.[4]

Jim GILLEN, Don Corey, d/b/a
Sani–Klean Service, Inc.,
Appellants,

v.

Wayne HOLLAND, Diane Johnson, Donald Coordes, William R. Ulrey, d/b/a Fairbanks Interior Floor Covering, BVM Construction, Inc., Alaska National Bank of the North, Earl Teagarden, d/b/a Rampart Floor Covering, Inc., and State Farm Fire & Casualty, Inc., Appellees.

No. S–3393.

Supreme Court of Alaska.

Aug. 24, 1990.

Rehearing Denied Sept. 25, 1990.

Brett M. Wood, Law Offices of Robert B. Downes, P.C., Fairbanks, for appellants.

---

Dennis M. Bump, Hughes, Thorsness, Gantz, Powell & Brundin, Fairbanks, for appellees.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

MOORE, Justice.

The issue in this appeal is whether the superior court erred in granting summary judgment on a cross-claim because it misconceived its legal basis. Jim Gillen and Don Corey doing business as Sani–Klean Service, Inc. ("Sani–Klean") argue that the superior court misconceived count II of their cross-claim as alleging only that Wayne Holland, the bailee of Sani–Klean's goods, breached a contract of insurance with Sani–Klean. Sani–Klean maintains that count II alleges that Holland bears the total risk of loss to the goods as bailee because it promised to procure full insurance for their mutual benefit. Holland counters that Sani–Klean conceded at oral argument on his summary judgment motion that its claim was limited to breach of an insurance contract and that it had dismissed any bailment claim. Although Sani–Klean made certain representations at oral argument that might lead a court to believe that he made just such a concession, the record is clear that it intended no such concession. Since Holland would bear the risk of loss for the goods if he had agreed to procure full insurance, and since there is a genuine issue of material fact as to whether Holland agreed to procure such insurance, we reverse and remand for further proceedings.

## I.

Sani–Klean obtained a contract with the United States Department of the Army to carpet housing units at Fort Wainwright. Sani–Klean then entered into a contract with Wayne Holland, doing business as Fairbanks Interior Floor Covering, to pur-

chase the carpet it needed to perform its contract with the Army. Gillen and Corey allege that Holland suggested to them that to facilitate performance of the Army contract the carpet be moved to a warehouse that Holland was leasing in North Pole. Gillen and Corey allege further that Holland told them that they need not be concerned about possible damage to the carpet while stored at Holland's warehouse because he had procured insurance which would protect Sani–Klean in case of property loss. In his deposition, Gillen testified that Holland said "I have insurance." Holland admits that he said this, but maintains that he never agreed to procure insurance or assume an obligation to indemnify Sani–Klean. In fact, the carpet was stored at Holland's warehouse and Holland had obtained an insurance policy from State Farm Fire & Casualty Company ("State Farm") that covered property damage to the carpet.[1]

On June 10, 1986, a fire damaged or destroyed the contents of the warehouse including the carpet. State Farm filed an interpleader action and deposited $40,600 in insurance proceeds with the court. State Farm named Sani–Klean and Holland among others as defendants. Both Holland and Sani–Klean submitted claims to State Farm for property damage.

Sani–Klean filed its answer in the interpleader action on December 12, 1986. Sani–Klean claimed that it lost more than $60,000 due to fire damage to its carpet. In addition, Sani–Klean asked for its anticipated profit from its contract with the Army which had been terminated. The court awarded Sani–Klean a total of $34,-600 of the fund.

Sani–Klean also asserted a cross-claim against Holland to recover the difference between its damages and its recovery from the interpleader fund. The two counts of the cross-claim allege as follows:

### Count I

24. As the bailee of Sani–Klean's property, Defendants Holland and John-

---

**1.** There is no indication whether Holland obtained the policy before or after contracting with Sani–Klean.

son, d/b/a Fairbanks Interior Floor Covering failed to exercise sufficient care for the protection of Sani–Klean's property and failed to take sufficient precautions to prevent its destruction.

. . . .

### Count II

26. Prior to delivering possession of the carpet to Defendant Fairbanks Interior Floor Covering, Defendant Holland represented to Sani–Klean that he had undertaken to provide full insurance coverage for property damage for the mutual benefit of Sani–Klean and Fairbanks Interior Floor Covering.

27. By agreeing to and in fact providing insurance coverage for the mutual benefit of Sani–Klean and Fairbanks Interior Floor Covering, Defendant Holland assumed the total risk of any loss for damage to or destruction of the carpet owned by Sani–Klean.

On September 25, 1987, the parties agreed to a stipulation dismissing count I of the cross-claim. On October 20, 1987, Holland filed a motion for summary judgment to dismiss the remaining count II of the cross-claim. Holland treated count II as alleging that Holland breached an oral contract to procure insurance. In its opposition, Sani–Klean responded that "[t]his is not a case for the breach of an oral contract to provide insurance." Sani–Klean's argument was that Holland's agreement to provide insurance is sufficient to shift the risk of loss for the carpet to him as the bailee of the goods. Sani–Klean only alleged that Holland agreed to procure insurance in order to support its claim that Holland as bailee was liable for the loss of the carpet.

At oral argument, however, the superior court understood count II of Sani–Klean's cross-claim as alleging only that Holland breached an insurance contract. The source of this confusion appears to stem from the wording of the stipulation concerning the dismissal of count I of the cross-claim. Counsel for Holland, Dennis Bump, erroneously drafted the stipulation to provide that count II for "breach of a

promise to provide insurance" is dismissed leaving count I "relating to bailment." Counsel for Sani–Klean, Brent Wood, indicated the error to Bump over the phone and they agreed that Wood could correct the error by crossing-out "II" and writing "I" above it. Unfortunately, the court appeared to attach great significance to the way in which the counts were described in the stipulation. Finding that Sani–Klean had failed to make a prima facie case for breach of an insurance contract, the court indicated that it would grant Holland's motion for summary judgment.

Sani–Klean promptly filed a motion for reconsideration. Sani–Klean reiterated to the court that "this was not a case for the breach of contract to provide full insurance coverage." Sani–Klean argued that its failure to make out a prima facie case for the existence of such a contract is immaterial since "the material question in this case is ... whether Holland (the bailee) impliedly assumed the responsibility for the total risk of loss by providing insurance for the mutual benefit for he and Sani–Klean." The court summarily denied Sani–Klean's motion for reconsideration and issued final judgment in favor of Holland.

### II.

Sani–Klean argues that the court granted Holland's motion for summary judgment only because it misconceived count II of the cross-claim as alleging a cause of action for breach of an insurance contract. Holland responds that the court's understanding of count II was proper in light of Sani–Klean's statements at oral argument indicating that "it had voluntarily dismissed its bailment claim." When the court asked the parties whether it was correct in concluding that the question before it was "the question of duty to insure, procure insurance, and the duty to indemnify in the event of inadequate insurance," Wood responded "[t]hat's what we're fighting over now, Your Honor." Later, when the court asked Wood whether he had "zapped" his bailment claim, Wood responded "That's correct, Your Honor." Holland suggests that Sani–Klean is simply

trying to raise arguments on the bailment claim that it already had dismissed voluntarily.

Holland's suggestion is incorrect. Wood's written memoranda as well as his statements at oral argument show that he never meant to voluntarily dismiss Sani-Klean's claim that Holland's promise to procure insurance shifted the risk of loss for the carpet to him as bailee. Sani-Klean made this argument in its opposition to Holland's summary judgment motion as well as in its motion for reconsideration. Sani-Klean even raised the issue at oral argument on the summary judgment motion:

> Mr. Wood: Well, Your Honor, I think it has to be remembered that *this case is not a case of a breach of a contract to procure insurance.* This is a case against Holland for property damage. He was storing carpet owned by my clients and represented to them that he had insurance coverage in case anything should happen to the carpet and pad.
>
> The Court: If I may interrupt, Mr. Wood, and feel free to grab that thought, step back a few steps and repeat as you need. But from the state of the pleadings now, it isn't really a damage to property, negligence claim. There are only so many ways you can recover for damage of property—bailment, negligence—and you've zapped those so far, have you not?
>
> Mr. Wood: That's correct, Your Honor. Here's my theory: Ordinarily, the bailee of property is responsible for his damage only if he's negligent.... [B]ut according to *Dresser Industries [Inc.] v. Foss, [Launch & Tug Co.,* 560 P.2d 393 (Alaska 1977)], the parties can allocate the burden of loss between the two of them. And one of the ways of doing this is for one of the parties to agree to procure and maintain insurance for the benefit of both. It's our contention that that's exactly what happened in this case; hence, Holland assumed the risk, the total risk of loss. He's liable and it's as simple as that Your Honor.

(Emphasis added). In his reply brief, Wood candidly admits that he cannot understand why he agreed with the court's statement that he had dismissed the bailment claim. He states that he simply must have misunderstood the court to be referring to a bailment claim predicated on negligence to which the parties had stipulated to dismiss.

The record establishes that Sani-Klean never intended to dismiss its claim that Holland is liable for the loss of the goods as bailee because it promised to procure full insurance. Although Wood did not help his cause by agreeing with the court's statement that he had voluntarily dismissed the "bailment claim," Sani-Klean's written memoranda as well as its other statements at oral argument indicate that the superior court misconceived the nature of count II of Sani-Klean's cross-claim.

### III.

Even though the superior court misconceived the nature of count II of the cross-claim, we may affirm the superior court's decision granting Holland's motion for summary judgment on count II if there is no genuine issue of material fact and if Holland is entitled to judgment as a matter of law. Alaska R.Civ.P. 56(c). Sani-Klean argues that Holland as bailee of the carpet is liable for its loss because he represented to Sani-Klean that he had insurance. Holland admits that he told Sani-Klean that he had insurance for the carpet. Holland maintains that because the parties agreed that this insurance was for their mutual benefit, Sani-Klean waived its right to proceed against the bailee.

■ Sani-Klean correctly states the general rule that "a bailee is liable for any loss or injury to the bailed goods caused by his failure to exercise the degree of care of a reasonably careful owner." *Dresser Industries, Inc. v. Foss Launch & Tug Co.,* 560 P.2d 393, 395 (Alaska 1977). In *Dresser,* we recognized that the parties may shift liability by express contractual agreement or by implication if one party agrees to provide full insurance coverage for the mutual benefit of both parties:

We have recognized, however, that the general rule may be modified by a contractual agreement between the parties. Thus liability can be allocated as the parties see fit so long as the contractual provision is not unconscionable. The parties can also provide by express terms that one party is responsible for procuring full insurance for the benefit of both parties. *In such a case, that party becomes responsible for the total risk of loss by affirmatively undertaking the duty to provide full insurance coverage for the mutual benefit of both parties.* 560 P.2d at 395 (footnotes omitted; emphasis added). We held that a provision stating that the bailor "shall be responsible for providing its own insurance" was not intended to protect the bailee from liability for its own negligence. 560 P.2d at 394, 395.

Holland admits that his insurance was intended for the mutual benefit of both parties. However, Holland interprets *Dresser* to say that when a bailor and a bailee agree that the bailor's existing insurance is for their mutual benefit, the bailee "waives its right to proceed further against the bailor." Holland concludes from this that since Sani–Klean and he agreed that his insurance was for their mutual benefit, Sani–Klean as bailor waived its right to proceed further against him.

Holland simply misreads the case. In *Dresser*, we suggested that if the bailor had agreed to procure insurance for the parties' mutual benefit, the bailor could not sue his bailee for negligence. 560 P.2d at 395 n. 6. By assuming responsibility for insuring the goods, the bailor assumes the risk of loss of the goods. In this case, it is the bailee, Holland, who allegedly assumed responsibility for providing full insurance coverage for the goods for the mutual benefit of both parties. If true, Holland "be-

comes responsible for the total risk of loss...." 560 P.2d at 395. Sani–Klean does not waive any rights against Holland by agreeing that Holland's insurance would be for their mutual benefit. To the contrary, such an agreement would confer on Sani–Klean the right against Holland to be compensated for the loss of the carpet.

The court ruled for Holland on an alternative theory. The court ruled that Sani–Klean failed to establish the five elements necessary to enforce a contract for the procurement of insurance. *See Howarth v. First Nat. Bank of Anchorage,* 596 P.2d 1164, 1168 (Alaska 1979).

In the bailment context, however, a party does not have to establish an agreement to insure in order to shift the risk of loss of the goods.[2] A bailor or bailee's agreement to purchase insurance for the benefit of both parties is sufficient to shift to it the risk of loss for the bailed goods.[3] Therefore, the court erred in dismissing Sani–Klean's claim on the ground that it failed to establish that Holland expressly agreed to insure Sani–Klean for loss of the goods.

There remains the genuine issue of material fact whether Holland undertook a duty to provide full insurance for the goods. If Holland did undertake such a duty, Sani–Klean would be entitled to judgment. Since there is a genuine issue of material fact as to count II of Sani–Klean's cross-claim, Holland is not entitled to summary judgment.

The decision of the superior court is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.

---

**2.** Thus, we do not reach the question whether the superior court's finding that there was no genuine issue of material fact whether Sani–Klean failed to satisfy the requirements to enforce an agreement to insure was in error.

**3.** *Dresser,* 560 P.2d at 395. Such an agreement will not be construed as holding a party harmless from the consequences of his or her own

negligence unless it clearly and unequivocably expresses the intention to shift liability. *Id.; see also Olympic, Inc. v. Providence Wash. Ins. Co.,* 648 P.2d 1008, 1011 (Alaska 1982). However, this rule has no effect in this case since Holland does not allege any negligence on the part of Sani–Klean.