Carolyn COSTER, Appellant,

v.

Andrew J. PIEKARSKI, Appellee.

No. S–8928.

Supreme Court of Alaska.

June 9, 2000.

C.R. Kennelly, Stepovich, Kennelly & Stepovich, P.C., Anchorage, for Appellant.

Gregory A. Miller, Birch, Horton, Bittner & Cherot, Anchorage, for Appellee.

Before MATTHEWS, Chief Justice, EASTAUGH, FABE, BRYNER, and CARPENETI, Justices.

## OPINION

EASTAUGH, Justice.

### I. *INTRODUCTION*

A bailor alleged the loss of valuable jewelry she concealed with the bailee's permission in the bailee's home. Was it error to grant summary judgment to the bailee whose affidavit stated that his home had been burglarized and that he had taken steps to secure the home? We conclude that it was, because there are genuine, material fact disputes about whether the burglary caused the loss. We therefore reverse and remand.

### II. *FACTS AND PROCEEDINGS*

Carolyn Coster sued Andrew Piekarski alleging negligent bailment. Coster testified in a deposition that Piekarski helped her hide jewelry worth $87,635 in his Eagle River home when she took a job in Valdez. She also testified that Piekarski allegedly told her, "I've lived here 25 years. My house has

never been robbed. Your stuff will be totally safe with me." Coster testified that Piekarski telephoned her in Valdez several months later to tell her that her jewelry had been stolen in a burglary while he was in Minnesota.

Piekarski moved for summary judgment. He conceded for motion purposes that a bailment existed, but argued that he had taken appropriate precautions to prevent the jewelry's loss.[1] He supported his motion with his affidavit denying the existence of a bailment—indeed, denying any knowledge of the jewelry's presence in his house—but claiming that his house had been burglarized during the time of the alleged bailment. He also explained the precautions he had taken to protect his home while he was Outside.

The superior court granted Piekarski's motion, concluding that there was "no evidence that Andrew Piekarski failed to exercise reasonable care in safeguarding [Coster's] property, or that he was involved in the theft in any way." Coster appeals.

## III. *DISCUSSION*

### A. *Standard of Review*

We review a grant of summary judgment de novo, affirming the superior court's decision if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.[2] In reviewing a motion for summary judgment, we take a "view of the facts that most favors the nonmoving party."[3] Where the disputed facts relate to the scope of a duty in a negligence action, as here, we hesitate to remove the resolution of such questions from the jury's consideration.[4]

### B. *Was There a Genuine Dispute About Whether the Loss Was Beyond Piekarski's Control?*

■ In a bailment case, the bailor (here Coster) bears an initial burden of establishing (1) the existence of a bailment, and (2) the damage, destruction, or loss of the chattel involved.[5] Those issues are undisputed here for the purposes of summary judgment. The burden therefore shifts to the bailee (here Piekarski) to prove:

1. that the cause of the damage or destruction was beyond his control, and

2. that there is evidence in explanation of the damage which would indicate care on his part in the protection of the property.[6]

Only after Piekarski has proved these facts does the burden of proving specific negligence shift back to Coster.[7] As this case is presented to us, Piekarski is entitled to summary judgment only if there is no genuine dispute that the loss was "beyond his control" and if he offers evidence permitting an inference that he exercised appropriate care.

■ The record establishes that there is a fact dispute about whether the jewelry's disappearance "was beyond [Piekarski's] control." On the one hand, Piekarski signed two letters in the summer of 1995 claiming that Coster had lost jewelry in the burglary. On the other hand, Piekarski supported his motion for summary judgment with his 1998 affidavit in which he denied any knowledge that Coster had brought jewelry to his house. Moreover, the police interviewed Piekarski when they investigated the burglary, but the police report does not list the jewelry as missing. Adding to the contradictions is Coster's testimony that Piekarski waited several days after the burglary before telephoning her in Valdez and "inform[ing her] of the robbery … and [her] missing property and

---

1. Given Piekarski's concession for motion purposes, we assume on appeal that there was a bailment.

2. *See Lane v. City of Kotzebue*, 982 P.2d 1270, 1272 (Alaska 1999).

3. *Saddler v. Alaska Marine Lines, Inc.*, 856 P.2d 784, 787 (Alaska 1993).

4. *See Arctic Tug & Barge, Inc. v. Raleigh, Schwarz & Powell*, 956 P.2d 1199, 1204 (Alaska 1998); *Maddox v. River & Sea Marine, Inc.*, 925 P.2d

1033, 1035 (Alaska 1996); *Smith v. State*, 921 P.2d 632, 634–35 (Alaska 1996).

5. *See State v. Stanley*, 506 P.2d 1284, 1289 (Alaska 1973). *See also Silvers v. Silvers*, 999 P.2d 786, 793–94 (Alaska 2000).

6. *Stanley*, 506 P.2d at 1289.

7. *See id.*

jewelry." The record does not explain how Piekarski could inform Coster of a theft of property he did not know was in the home, or why he did not report loss of the jewelry to the police when he reported the burglary. The circumstances surrounding the burglary and the seemingly contemporaneous jewelry disappearance remain murky.

We acknowledge that Piekarski only concedes the fact of a bailment for the purpose of summary judgment and that he asserts that he would contest the fact of bailment at trial. The burden of proof per *State v. Stanley*[8] does not prevent Piekarski from litigating the question of bailment at trial. But it is nonetheless insufficient proof of a cause "beyond his control" for him to state simply that a burglary occurred during the term of the bailment. Something more is required, particularly some evidence that tends to prove that the burglary caused the loss of Coster's jewelry. Piekarski has not stated, for example, that the burglars exposed his "secret-hiding spot" under his bedroom dresser, where Coster claims to have hidden her jewelry at his suggestion, or even whether the burglars entered or took anything from his bedroom.[9] He has not stated that he noticed the jewelry missing when he inventoried stolen items for the police. He did not report to the police that the jewelry had been stolen. In short, he has provided no evidence tying any loss of the jewelry to the burglary.

Piekarski's inconsistent statements about whether the jewelry was even in his house could reasonably cause a jury to question whether the loss was "beyond his control."[10]

These inconsistencies put Piekarski's credibility in genuine dispute. Questions about witness credibility will not necessarily preclude summary judgment, unless supported by specific facts.[11] But the inconsistencies noted above themselves constitute specific facts that require sending the "beyond control" issue to a fact finder. Only a fact finder can resolve the fundamental disputes about whether the jewelry was ever in the home, and whether it was lost in a burglary. We also note that Piekarski cannot simultaneously concede the existence of a bailment for summary judgment purposes while also relying on his testimony that the jewelry was not in his home.

## C. Did Piekarski Exercise the Necessary Care?

 A bailee has the duty to "exercise the degree of care of a reasonably careful owner."[12] The care that is reasonable will necessarily depend on the particular circumstances of each bailment.[13] The risks Piekarski's home presented are relevant to the precautions Piekarski had to take to protect Coster's jewelry.

The record contains contradictory evidence about the safety of Coster's jewelry in Piekarski's home. There was evidence that Piekarski, before leaving the state, took precautions to safeguard his home. He locked his house and chained King, his Rottweiler, outside. He asked his neighbor to care for the dog and watch over the house. In his affidavit, Piekarski discussed his neighborhood's safety: "I have lived in the neighborhood for approximately 25 years, and I have never known there to be a burglary, robbery *or other similar crime* prior to this October 1994 burglary."[14] Coster testified in deposition that Piekarski had told her much the

---

8. 506 P.2d 1284 (Alaska 1973).

9. The police report does not describe the pre-burglary locations of any of the items reported as lost.

10. *Stanley*, 506 P.2d at 1289.

11. *See Arctic Tug & Barge*, 956 P.2d at 1201.

12. *Dresser Indus., Inc. v. Foss Launch & Tug Co.*, 560 P.2d 393, 395 (Alaska 1977); *see also Alaska Continental, Inc. v. Trickey*, 933 P.2d 528, 536 (Alaska 1997) (citing *Dresser*); *Gillen v. Holland*, 797 P.2d 646, 649 (Alaska 1990) (same).

13. *See Adams v. State*, 555 P.2d 235, 240–41 (Alaska 1976) (stating that "reasonable care will, of course, vary with the circumstances and hazards involved"); *see also* Restatement (Second) Torts § 283 (1965) ("Unless the actor is a child, the standard of conduct to which he must conform to avoid being negligent is that of a reasonable man *under like circumstances*." (Emphasis added.)).

14. (Emphasis added.)

same thing when she agreed to bail her property to him. But she argues on appeal ·that Piekarski's description was not accurate. She relies on State Farm Insurance documents in the record that indicate that someone attempted to break into a vehicle parked in Piekarski's driveway only a few weeks before Coster moved her jewelry into his home.[15]

Relying on the evidence of the alleged vehicular break-in, Coster argues that there were genuine fact disputes about the reasonableness of Piekarski's conduct, barring summary judgment. In essence, she reasons that if Piekarski knew of a vehicular break-in at his home only weeks before accepting the jewelry bailment, a jury might conclude that a "reasonably careful owner" in those circumstances would have taken greater precautions to protect valuable jewelry when leaving the state, perhaps by returning it to the owner, giving it to another person for safekeeping, or storing it in a safe deposit box. Whether any additional precautions were necessary beyond those Piekarski· took depends largely upon how safe his home was for the storage of valuables.

Piekarski argues that Coster is barred from making this argument because she asserts it for the first time on appeal. Coster did not argue in the superior court that the prior break-in had a direct bearing on the reasonableness of Piekarski's precautions. She there· argued only that Piekarski had taken inadequate measures because she believed he had taken King from the home premises and moved him to a distant fishing lodge. The superior court, considering her narrow argument, concluded that her unsupported speculation that King had been removed was insufficient to overcome direct evidence that King had been staked at the

home at all relevant times. It therefore did not err in holding, based on her argument, that Coster's "negligence claim fails."

Having concluded in Part III.B that it was error to hold on summary judgment that the loss was beyond Piekarski's control, it is necessary to remand for further proceedings. We consequently also conclude that Coster should not be foreclosed from asserting her new appellate negligence theory on remand. Absent a showing of undue prejudice resulting from her failure to raise this argument in the superior court, there is no obvious reason why 'her prior failure to preserve the issue for the appellate court should finally bar her from raising this issue on remand to the trial court. Piekarski has not claimed any prejudice in having to respond to this argument on appeal.[16] The argument she now raises for the first time is not inherently inconsistent with her former argument; indeed, it is grounded in the basic elements of any bailment case, and relies solely on facts within the record.[17] The claim might have convinced the superior court to deny summary judgment to Piekarski on the due care issue. At least the claim is sufficiently plausible that we decline to hold that the law-of-the-case doctrine somehow prevents Coster from asserting it on remand or makes the summary judgment on the due care issue final. The superior court will have the first opportunity to give substantive consideration to this claim; this means that the appellate court is not granting relief on a ground the trial court never had· an opportunity to consider. ·

## IV. CONCLUSION

There are genuine issues of material fact about whether any loss of the jewelry was beyond Piekarski's control. We therefore

---

**15.** The State Farm evidence was not undisputed. Piekarski's superior ·at work testified that the vehicle break-in actually happened in downtown Anchorage.

Piekarski also argues that the State Farm records were inadmissible. They were presented as part of the business records of Piekarski's labor union. They also potentially memorialize information supplied by Piekarski. Their admissibility can be explored on remand.

**16.** See Pacific Marine Ins. Co. of Alaska in Liquidation v. Harvest States Coop., 877 P.2d 264, 266–67 n. 1 (Alaska 1994) (deeming it relevant whether argument first raised on appeal prejudiced opposing party).

**17.** See O'Neill Investigations, Inc. v. Illinois Employers Ins. of Wausau, 636 P.2d 1170, 1175 n. 7 (Alaska 1981) (deeming argument preserved because it was "not dependent on any new or controverted facts, and because it [was] closely related to [the] trial court theory").

REVERSE Piekarski's summary judgment and REMAND for further proceedings.

The parties' appellate arguments focus almost exclusively on bailment, but we observe that the same credibility issues bearing on the bailment control issue discussed in Part III.B would appear to preclude a defense summary judgment on the conversion claim given the record as it presently exists.